### In re JOVE ENGINEERING, INC., Debtor.

### No. CV 93–PT–1544–S.

United States District Court,
N.D. Alabama,
Southern Division.

April 13, 1994.

Romaine S. Scott, III and Valrey W. Early, III, Rives & Peterson, Birmingham, AL, for debtor Jove Engineering.

Cynthia L. Stier, U.S. Dept. of Justice, Washington, DC, for U.S. Government.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PROPST, District Judge.

This cause came on to be heard on March 30, 1994 at 8:30 a.m. at a final evidentiary hearing.

The parties agreed that the following facts set out in this court's Memorandum Opinion filed on January 18, 1994 are true and correct.

*Stipulated Facts*

On October 20, 1992, debtor in possession, Jove Engineering, Inc., filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. This filing precipitated an automatic stay as to most all collection or enforcement actions by creditors. *See,* 11 U.S.C. § 362(a).

When the case was filed, the I.R.S. was listed as a creditor of Jove, although Jove disputes the listed debt. On or about November 6, 1992, the Clerk of the Bankruptcy Court for the Northern District of Alabama sent notices of the pendency of this case to the I.R.S. as well as to other creditors in this action. Jove submits a series of Exhibits (A–I) in support of its motion for contempt and these exhibits provide the factual and chronological bases for its motion.[1]

---

1. The court has previously rejected Jove's argument that it is entitled to maintain an action pursuant to 11 U.S.C. § 362(h).

Exhibit A, dated November 12, 1992, refers to correspondence from Judy Hibbard, Special Procedures Staff with the Birmingham office of the I.R.S., to Mr. Walter Brough, President of Jove, informing him of her knowledge of Jove's filing for bankruptcy and stating that the purpose of the letter is to inform Brough of some of the I.R.S.' concerns when a taxpayer files for bankruptcy. (Plaintiff's Exhibit A, at 1). The letter includes the subheadings, "Post-petition Taxes, Plan of Reorganization, Objections to Internal Revenue Claims, Post–Petition Levy or Seizure by Internal Revenue Service, Notices of Hearings and File Your Plan of Reorganization." The letter includes a notation that a copy will be sent to attorney for Jove, Romaine Scott.[2]

Exhibit B, dated November 18, 1992, is a letter from Scott to Hibbard thanking her for the information contained in the above letter and requesting that all further correspondence and information be directed to himself instead of to his client.

Exhibit C, dated November 25, 1992, is a letter from Scott to Hibbard thanking her again for the stated information, reiterating his request that all future correspondence be sent to his office and alerting her to the enclosed copy of the "notice of first meeting of creditors." Scott recommends that if the I.R.S. believes it has a valid claim against Jove, it should file a proof of claim.

Exhibit D is a letter from I.R.S. offices in Memphis to Jove, dated December 21, 1992, with the heading "Request for Payment," stating that its records show that Jove owes $92,923.57 in taxes, $18,558.37 in penalties and $951.71 in interest for a total of $112,-433.65. The letter states that in order to "avoid additional penalty and/or interest," the payment should be received by December 31, 1992.

Exhibit E, dated January 7, 1993, is a letter from Scott to the office of the I.R.S. in Memphis stating that his firm represents Jove and that Jove filed for Chapter 11 bankruptcy on October 20, 1992. Enclosed with the letter is a notice of the first meeting of creditors and a request that the I.R.S. file its claim with the Clerk of the Bankruptcy Court.

Exhibit F is a letter from Della Sanford, Chief of the Correspondence Section in the Memphis office, responding to Scott's letter stating, "we are sorry, but we cannot give you the information you requested."[3] The letter further states that the I.R.S. has no record that Scott is authorized to receive information on behalf of Jove, and that, in order to receive confidential tax information, Scott must provide a power of attorney, a tax information authorization or "other written evidence of . . . [his] authority." The letter included enclosed "power of attorney" and "tax information authorization" forms.

On March 4, 1993, the I.R.S. filed its proof of claim with the Bankruptcy Court for unpaid federal taxes in the amount of $304,-239.08.

Exhibit G, dated March 29, 1993, is a certified letter from the I.R.S. in Memphis to Jove with the heading "Notice of Intent to Levy—Immediate Response Requested." The letter states that Jove owes the I.R.S. $41,307.71 in unpaid taxes, $171.26 in late payment penalty and $266.64 in interest. The letter further warns that if the payment is not received by April 28, 1993, "the law allows us to seize your property or rights to property such as real estate and personal property to collect the amount you still owe." The letter references the tax period ending December 31, 1992.

Exhibit H, is a letter dated April 5 from Scott to the I.R.S. offices in Memphis. The

---

**2.** Mr. Brough testified that Ms. Hibbard called him and advised him of similar information prior to mailing the letter. Ms. Hibbard does not remember making such a call. The court does not deem it significant one way or the other because it does not deem the providing of the information to be a violation of the automatic stay.

**3.** This response is somewhat puzzling to the court because it does not appear that Scott had requested any information from the I.R.S. offices. It appears that a form letter was sent in response to Scott's specific request that if the IRS has a claim against his client it should file that claim with the court. On the other hand, it is understandable why any correspondence from one other than the taxpayer might spawn such a letter.

letter reiterates the information contained in the prior letters from Scott regarding the notice for the first meeting of creditors and the fact that Jove has filed for bankruptcy. Scott repeated his request that all further information be sent to his offices and stated that "any further direct communications with Jove ... will be interpreted as a willful violation of the automatic stay and appropriate action will be taken."

Although not submitted with the exhibits to this court, contained within the case file is a copy of the "power of attorney" form sent by Scott to the I.R.S. offices in Memphis. The form is marked received on April 8, 1993.

Exhibit I, the last item submitted, is another "Notice of Intent to Levy—Immediate Response Required" letter from I.R.S. offices in Memphis addressed to Jove. The notice is dated April 15, 1993. The notice states that Jove owes $3,773.43 in unpaid taxes, $16.16 in unpaid penalties and $24.32 in interest. Again, it references the tax period ending December 31, 1992.

On April 28, 1993, Jove filed a motion with the Bankruptcy Court to hold the I.R.S. in Civil Contempt and Liable for Damages for Willful Violation of Automatic Stay. After both Jove and the I.R.S. filed briefs addressing the contempt motion, Jove submitted a motion with the Bankruptcy Court to withdraw the contempt motion for consideration by this court stating questions as to whether the bankruptcy court had the authority to rule on this type of motion.

Although not formally submitted to this court, Jove also possessed exhibits, dated after the filing of its motion for contempt, that purport to further support its allegations of willful violation of the stay. On May 3, 1993, the I.R.S. office in Memphis sent Jove a letter stating that it had no record that Romaine Scott was authorized to act for Jove and directed Jove to clear up this matter with the personnel in its Birmingham office. On May 17, 1993, Jove received a notice from the I.R.S. stating "balance due on 3rd Q and 4th Q 941 returns for 1992. Plus 1992 940. Failure to keep appointment could result in enforcement action." It appears that on June 1, 1993, Jove received a visit from a member of the I.R.S. staff. An interoffice memo from Paul Nickerson to Walter Brough outlines Nickerson's interaction with a woman from the I.R.S. seeking to speak with senior personnel in Jove. The memo states that the woman asked for an officer of the company or whoever handled taxes and that no one was available to meet with her. Nickerson claims that he asked her if she had made an appointment and he claims that she replied "that she was new on the case, and that she did not set up appointments by phone. She found it better just to drop in and set up an appointment if the person(s) she wanted to see were unavailable." The woman from the I.R.S. refused to discuss the details of her visit with an non-officer of the corporation and left some papers in a sealed envelope with Nickerson to pass along to the president of Jove. These forms included a 433–B, "Collection Information Statement for Businesses" and a sheet outlining one's rights as a taxpayer.

On July 19, 1993, Bankruptcy Judge Clifford Fulford filed an order granting the motion to withdraw the contempt motion to the district court. The majority of Judge Fulford's order discusses the obscurity surrounding the issue of whether bankruptcy judges should exercise civil contempt powers or whether such matters should be heard by district courts. Judge Fulford was, however, quite clear as to his opinion regarding certain issues involved in the finding of contempt under 11 U.S.C. 362(h).[4]

In response to the above stated order, Jove filed a motion requesting clarification as to whether Judge Fulford's order actually constituted a denial of Jove's request for relief under 11 U.S.C. § 362(h). On July 23, 1993, Judge Fulford amended his order of July 19, 1993, stating

> The Court, therefore, hereby amends its Order of July 19, 1993, to clarify that the intent of its original Order was to withdraw the reference as to all issues presented in Jove's Motion for Contempt, includ-

---

4. Judge Fulford's first Order states, "[t]he IRS argues correctly that § 362(h) of the Code provides relief only to individuals, and that Jove, a corporation, is not within its coverage...."

ing issues related to the application of 11 U.S.C. § 362(h), and that the Court's original Order is not in any way to be considered or construed to be a ruling on the merits of Jove's request for relief under 11 U.S.C. § 362(h)....

### Evidentiary Hearing

The evidentiary hearing shed significant light on the history of the case and gave added context to the above mentioned exhibits. The court will find further facts with regard to the circumstances under which the various exhibits were created and various contacts made.[5] The exhibit references will be to the exhibits as identified at trial combined with the identification in the above mentioned Memorandum Opinion. Exhibits E and F mentioned in the Memorandum Opinion were not offered at the evidentiary hearing.[6]

Jx–11(A) does not, in any way, violate the automatic stay. It is an informational letter from Judy Hibbard of the IRS Birmingham office. The letter acknowledges Jove's Chapter 11 petition and further advises Jove of its post-petition obligations to pay taxes as they accrue.[7] It also advises the debtor of its rights and obligations with reference to taxes accrued pre-petition. It further advises the debtor of provisions of a plan of reorganization as to which IRS will and will not object. Section 4 of the November 12 letter states:

> Post-petition Levy or Seizure by Internal Revenue Service.
> Occasionally the Service inadvertently levies on or seizes property of the debtor subsequent to the filing of the petition for reorganization. If a problem of this kind is encountered, please call our office immediately at (205) 731–1248. We will attempt to resolve the matter as expeditiously as possible. In virtually every case, we can quickly release the levy. Filing a motion

to hold the Internal Revenue Service in contempt usually delays resolution of the matter.

There is no evidence that any representative of Jove, attorney or otherwise, ever called (205) 731–1248 to advise anyone at that number concerning any post-petition activity of IRS.

Jx–5(B) and Jx–6(C) are simply letters from Jove's attorney *to Ms. Hibbard* requesting that future correspondence be directed to Jove's attorney. The court finds no evidence of any action by IRS between the November 18 letter (Jx–5) and the November 25 letter (Jx–6) which prompted the additional November 25 letter. The only addition to the November 25 letter is a suggestion that a claim be filed.

Sometime after the filing of the bankruptcy petition on October 20, 1992, Jove filed with the IRS Memphis office a Form 941 return, for the tax period ending September 30, 1992 (all pre-petition), reflecting tax liability for said quarter. Apparently, there had been some deposit credits toward said liability, but there was, as of December 21, 1992, an alleged underpayment of $92,923.57 with regard to a total liability of $139,387.77.

In the meantime, the Birmingham office of IRS had entered, in November 1992, a computer code which reflected that Jove had filed a petition under Chapter 11. The code did not preclude the acceptance of payments with reference to post-petition liability nor the sending of requests for payments or notices with reference to such liability. The IRS Memphis office had access to this entry. While there is evidence that this code variable is entered so as to allow the addressing of post-petition liability, there is no evidence or explanation as to why the code entry did not preclude attempts to collect returns filed post-petition but with sole reference to pre-petition liability.[8]

---

5. In order to discuss the exhibits in context, the court will repeat some facts agreed to as stated above.

6. Exhibits offered by Jove will be referred to as Jx, followed by the letter designation used in the Memorandum Opinion. Government exhibits will be referred to as Gx.

7. Apparently, Jove has complied with this obligation during the pendency of its Chapter 11 bankruptcy proceeding.

8. It may be, however, that the September 30, 1992, return was received in Memphis and entered in the computer *before* the Birmingham office made the computer entry.

On December 21, 1992, the IRS Memphis office sent Jove a "Request for Payment," with reference to the tax period ending September 30, 1992, for $92,923.57 plus penalty and interest, for a total of $112,433.65. Jx–2(D). Apparently this request was mailed because Jove's tax return was filed post-petition, even though it dealt with pre-petition liability.[9]

Jx–3(G) is a "Notice of Intent To Levy–Immediate Response Required" dated March 29, 1993, based upon the tax period ending December 31, 1992. This quarter included 19 days pre-petition, with the remainder post-petition. It is perhaps understandable why the return may have been treated as a post petition return. The return contained a note suggesting that Jove was in bankruptcy. It is not entirely clear how Jove arrived at the "Amount under Bankruptcy Chapter 11." Such returns, when entered into the computer, do not likely receive individualized attention. There may be an issue as to whether they should. The information letter, Jx–11, gives a number for the taxpayer to call if there is any question. This was never done.

On April 5, 1993, Jove's attorney wrote to the IRS Memphis office complaining of the March 29, 1993 notice. Jx–7(H). It states, "Any further direct communication with [Jove] will be interpreted as a willful violation of the automatic stay and appropriate action will be taken." It should be recalled that both this letter and the March 29 notice referred to the tax period ending December 31, 1992. Again, no call was made to the Birmingham office.

On April 12, 1993, the IRS Memphis office sent another "Notice Of Intent To Levy–Immediate Response Required," with regard to the period ending December 31, 1992, directly to Jove.[10] Apparently some amount had been paid toward the earlier liability, because the claim had been reduced from $41,743.61 to $3,818.91.

At this point, Jove's attorney contacted Mr. Leon F. Kelly, Jr., Assistant U.S. Attorney in Birmingham.[11] Mr. Kelly immediately called Mrs. Hibbard or someone in her office. This was the same office whose telephone number was referenced in Jx–11. As a result of this only contact with an IRS representative directly associated with the bankruptcy proceeding, a computer "freeze" was immediately placed on further extrajudicial action.

Unfortunately, the "freeze" was not in place until after May 18, 1993. In the meantime, Ms. Martha Langston, an IRS Revenue Officer in Birmingham, received a transfer of collection responsibilities from one Birmingham geographic area to another Birmingham geographic area. Fate assigned her the Jove account. Apparently, there was a "bankruptcy entry" (from November 1992) in the computer, but not the freeze.[12] Ms. Langston reviewed the file and the computer on May 18, but did not again do so prior to June 1, 1993.

On June 1, 1993, Ms. Langston personally went to Jove's offices in Birmingham and asked to see the President or some other officer of Jove. This was her only direct contact with Mr. Nickerson, the Human Resources manager of Jove. See Jx–1. Mr. Nickerson's memo confirms that Ms. Langston was "new on the case." Mr. Nickerson was unduly sensitive to the mild, unthreatening visit. Ms. Langston merely stated that she was from the IRS. Told that no officer

9. There is no evidence that IRS sent any further requests or notices or took any further action to collect taxes for the period ending September 30, 1992, other than by filing a claim in bankruptcy.

10. These various notices were not based on determinations by some individual(s). The notices were automatically kicked out by the computer.

11. This was the first direct contact by Jove or its attorneys with anyone associated with the IRS Birmingham office, the one which had sent Jx–11, complaining of any IRS contacts by the Memphis office. Of course, Mr. Kelly is not with IRS, but was known by Jove's attorney to handle IRS matters in the Birmingham, Alabama area. There is no evidence that Jove or its attorney *ever* called the telephone number mentioned in Jx–11.

12. Hibbard testified that a bankruptcy "freeze" was not usually placed in the computer to allow for computer credit of post-petition payments. This was based on an understanding that post-petition liability would be paid. This may create a problem with regard to notices. The only significant collection action ever taken related to a split (pre-petition and post-petition) return.

was available, Ms. Langston wrote on some documents and left them in a sealed envelope for delivery to Mr. Walter Brough, Jove's President. Jx-1. These documents included a blank "Collection Information" form, and a printed "Your Rights As A Taxpayer" form. Jove was told, *inter alia,* that it was entitled to "Courtesy and Consideration" and the right to make complaints. The exhibit copy of the other form is apparently not complete. The part which is complete suggests that Ms. Langston was advising Jove that she had come to collect the balance due for the fourth quarter 1992 on Jove's 941 return. (See Jx-4). Something is also mentioned with reference to a 1992 940 form. The exhibit does not include a full reference to an appointment, but does end "[f]ailure to keep appointment ... [wo]uld result in ... [e]nforcement action." Presumably, Ms. Langston had attempted to schedule an appointment and mildly threatened enforcement action if not kept.[13]

In a nutshell, the alleged "willful and heinous" conduct to which Jove had been exposed at this juncture was:

(1) One mild informative letter concerning the bankruptcy procedure. There *may* have been a phone call from Hibbard to Brough concerning the same matters. This did not violate the stay.

(2) One mild, not pursued, request for payment as to the quarter ending September 30, 1992;

(3) Two notices of intent to levy with reference to a period, over two-thirds of which was post-petition; and

(4) the mild visit and moderately threatening note of Ms. Langston.[14]

Contrasted with the foregoing is the usual hyperbolic attempt by Jove to compare this relatively mild, non-obtrusive conduct to the more egregious conduct described in another case in which big money was awarded. *See In re Lile,* 103 B.R. 830 (Bkrtcy.S.D.Tex. 1989). Conduct found to exist in that case included:

12. On January 22, 1988, the IRS obtained an order for entry on the premises to effect a levy.

\* \* \* \* \* \*

14. On January 27, 1988, McGirr assisted by Revenue Officers Bart Hill and Laura Williamson went to the premises of BCOC for the purposes of seizing property belonging to BCOC in order to satisfy its outstanding tax liabilities.[15]

\* \* \* \* \* \*

16. At the seizure on January 27, 1988, Lile reiterated to McGirr that Lile personally was the owner of the lease and most of the personal property in the lease premises. Lile reminded McGirr that Lile was a Chapter 11 debtor.

17. Lile was current in his lease payments to Lamesa Properties, his landlord, for the premises at 2171 Richmond, on January 27, 1988.

\* \* \* \* \* \*

13. When Ms. Langston learned, several days later, that Jove was in bankruptcy and that the collection action was "frozen," she called Jove, canceled her appointment and closed her file. See Gx-1.

14. There is also evidence concerning phone calls, purportedly from IRS officer Bobby Washington, to Mr. Brough. Ms. Hibbard testified that Washington had been assigned to contact Brough, as an individual, concerning possible personal 100% penalty liability. Prior to the hearing, Jove had not made reference to these contacts by Washington. The court cannot find, from a preponderance of the evidence, that Washington made any effort to collect *from Jove.* See Gx-2 and the 6–1–93 entry.
Hibbard testified that she asked Washington to instigate the 100% personal liability investigation

at about the same time (between May 23, and June 1, 1993) she, at the request of Kelly, caused the computer freeze to be entered. Gx-1 indicates this was done on June 1, 1993. It seems logical that one may have triggered the other. This, coupled with the fact that there were no pretrial references to the Washington phone calls, contributes to the court's inability to conclude, from a preponderance of the evidence, that Washington was pursuing a claim against Jove.

15. At one time both Lile, as an individual, and BCOC, a corporation, had been Chapter 11 debtors. The BCOC case had been earlier dismissed. Lile's case was still pending. The claim against IRS was by Lile as an individual.

19. Joseph Caudill, the lease manager for Lamesa Properties, appeared at the seizure. Either he or Lile showed a copy of Lile's lease to the IRS, which showed Lile was the owner of the lease.

20. McGirr told Caudill that it did not matter who owned the lease, the IRS was shutting the business down.

21. Lile or his attorneys also told McGirr that Lile or his wife owned most of the furniture and fixtures in the restaurant and that taking the personal property of Lile would violate the Section 362 stay.

\* \* \* \* \* \*

25. Despite warnings, the IRS seized the leasehold estate by locking and securing it and all the contents of the leased space.

26. The IRS chained and/or padlocked the doors and gates of the leased space. Lile never contacted the IRS for access.

\* \* \* \* \* \*

33. The IRS never requested relief from the 11 U.S.C. § 362 stay in the Lile bankruptcy case.

\* \* \* \* \* \*

41. On March 30, 1988, the debtor filed a motion for contempt for violation of 11 U.S.C. § 362 and for sanctions under 11 U.S.C. § 362(h).

\* \* \* \* \* \*

46. Immediately prior to the seizure, Lile owned the restaurant equipment in the leasehold which had a value as part of an operating business of $120,000. When the property was returned on March 17, 1988, it had a value of about $10,000.

47. Lile claimed a loss of $960,188 resulting from his inability to sell his rights under his long term lease as a result of the IRS seizure. His lease had on January 27, 1988, a remaining term of about 7 years. His rental rates were low for the area.

The Texas bankruptcy court concluded:

The threshold issue to be decided by this court is whether the IRS violated the automatic stay provisions of 11 U.S.C. § 362 upon seizure and retention of personal property of the debtor and if so, was this violation willful. If the IRS willfully violated the automatic stay, I must determine the amount of damages to be assessed against the IRS pursuant to 11 U.S.C. § 362(h).[16]

\* \* \* \* \* \*

A violation of the automatic stay by itself does not automatically warrant an award of monetary damages or the imposition of sanctions.... However, when a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful.

\* \* \* \* \* \*

The agent's actions were deliberate and intentional, and thus constituted willful conduct upon the part of the IRS.[17]

\* \* \* \* \* \*

The retention of Lile's property with full knowledge of the bankruptcy petition is in itself a continuing *violation* of the stay and grounds for damages. (emphasis in original).

\* \* \* \* \* \*

I therefore hold that the actions taken by the *IRS* clearly reflect a willful *violation* of the 11 U.S.C. § 362 *automatic stay* for which *sanctions* should be imposed. Where a willful *violation* of the stay is demonstrated compensatory damages are mandatory. 11 U.S.C. § 362(h) (1988). (emphasis in original).

\* \* \* \* \* \*

The evidence showed that Lile's personal property was worth $120,000 in place if sold in conjunction with an operating restaurant. The only evidence about its value when returned was that Lile asserted it had a value of $10,000.

\* \* \* \* \* \*

Where the debtor is forced to resort to the courts to enforce his rights, attorney's fees should be awarded to the debtor's attorney in order to make the debtor whole. Sec-

---

**16.** This court has concluded that § 362(h) has no application to this case. Lile was an *individual*.

**17.** This court finds no such conduct on the part of any revenue officer or agent in this case.

tion 362(h) specifies that attorneys' fees may be awarded.

\* \* \* \* \* \*

I also conclude that an award of punitive damages is appropriate in this case. In order to sustain an award for punitive damages, "the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so."

\* \* \* \* \* \*

*The IRS agent acted with reckless disregard and in "arrogant defiance" of a federally protected right. The IRS's actions caused unnecessary expense to Lile's estate* which could have been avoided if the IRS had first sought relief from the stay under 11 U.S.C. § 362(d). Thus, I find that punitive damages of $100,000 are necessary to deter the *IRS* from willfully violating 11 U.S.C. § 362(a) in the future. (some emphasis added).

\* \* \* \* \* \*

I hold that the *IRS* violated the *automatic stay* provision in this case under 11 U.S.C. § 362(a)(3) damaging Lile in the amount of $450. I additionally find that this *violation* was willful and that *sanctions* pursuant to 11 U.S.C. § 362(h) should be imposed against the *IRS* in the amount of $100,000.[18]

The court has quoted extensively from *Lile* in order to emphasize how inapt the comparison is. Here, once the debtor made contact with an appropriate party, the action, except for one, mild, purely innocent contact, ceased. There was absolutely no malice and nothing approaching "arrogant defiance" or reckless disregard.[19] A computer was, perhaps, not finely tuned.

It is arguable that IRS has committed a technical violation by sending the two notices

of intent to levy and making the *one,* and only *one,* mild visit. Even that issue is muddled by the fact that these contacts related to a return that included post-petition taxes due. In any event, Jove's bark has been much worse than the bite of IRS. There has been an attempt at overkill. It would be entirely inappropriate to allow attorney fees incurred in pursuing the § 362(h) issue. Furthermore, it would be inappropriate to allow recovery for fees incurred after the IRS clearly resolved the issue after Kelly was contacted. The filing of the contempt proceedings was not required to cause the IRS procedures to cease.

This court had earlier given consideration to awarding at least some token amount for sanctions because of the possible technical violations of the automatic stay. However, in a most recent submittal, this court noted the following statement in *Collier On Bankruptcy,* § 362.11, p. 362–84:

> There should be little doubt that where the violation of the stay is inadvertent, contempt is not an appropriate remedy, although the creditor will have a duty to undo actions taken in violation of the automatic stay.

(footnotes omitted).

This court can come to no reasonable conclusion other than that all the purported violations were inadvertent and could have been remedied with a phone call. Under such circumstances, this court concludes that it cannot find the defendant in contempt and will make no award other than a $500.00 attorney fee award. Five hundred dollars worth of attorney fee time would have been, and was, ample to resolve any purported dispute. No such reactive, overplayed action as this was necessary.

Even if the IRS should be held in contempt and sanctioned, the amount awarded

---

18. Again, note the award pursuant to *§ 362(h)*.

19. The court finds that Jove's efforts to prove that these actions were highly disruptive to the conduct of its business are over-inflated and primarily retaliatory and retributive. The IRS did not cause Jove's Chapter 11 proceeding nor exacerbate its business concerns. One indication that there has been no deliberate action to violate

the stay is that the total IRS claim is approximately $304,000.00. The greatest amount as to which there has ever been a "notice of Intent to Levy" is some $41,000.00. Further, the initial "Request for Payment" as to the clearly total prepetition return (filed post-petition) was never pursued. The case may not be "much ado about nothing." It is much ado about very little.

by the court under these circumstances is sufficient. The ignoring of the telephone number specifically given to cover the situation, the fast action once that number was contacted, the lack of any willfulness by any human being, the total overplaying of the alleged harm, the rush to file the contempt proceedings while the problem was being promptly addressed, etc. all militate against any substantial award. A substantial award would reward an effort to try to reduce the taxes owed rather than to solve the problem.[20] The amount will be credited toward taxes otherwise determined to be due IRS in the bankruptcy proceedings.[21]

## ORDER

In accordance with the Findings of Fact and Conclusions of Law filed contemporaneously herewith, the Debtor, Jove Technologies, Inc., formerly Jove Engineering, Inc., is awarded $500.00, as attorney fees against the Internal Revenue Service for violation of the automatic stay under the provisions of 11 U.S.C. § 362 pursuant to § 105. The amount will be credited toward any amount determined to be due IRS in the bankruptcy proceedings. This cause is **REMANDED** to the bankruptcy court for further proceedings.

**DONE** and **ORDERED.**

---

**20.** Even § 362(h) refers to an individual *injured* by a willful violation. Here, there was no injury and no willful violation. The court earlier reserved judgment on the willfulness issue. It now decides that there was none. Even if, technically, there were, the circumstances do not call for punishment.

**21.** At this stage, the court should note that even if it were to apply § 362(h), its award would be no different. The court would not award punitive damages or additional attorney fees.