United States Court of Appeals,

Eleventh Circuit.

No. 94-6372.

In re JOVE ENGINEERING, INC., Debtor-Appellant, Cross-Appellee,

v.

INTERNAL REVENUE SERVICE, Appellee, Cross-Appellant.

Aug. 29, 1996.

Appeals from the United States District Court for the Northern District of Alabama. (No. CV93-PT-1544-S), Robert B. Propst, Judge.

Before BIRCH and BARKETT, Circuit Judges, and SMITH[*], Senior Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge:

Jove Engineering, Inc. ("Jove") appeals the district court's order denying it relief against the Internal Revenue Service ("IRS") under 11 U.S.C. § 362(h),[1] and limiting Jove's relief under 11 U.S.C. § 105. The district court limited Jove's relief to the amount of $500 as attorney fees, to be offset against any bankruptcy liability to IRS, for the violation by IRS of 11 U.S.C. § 362(a), and specifically the automatic stay provision which arose when Jove filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. *In re Jove Engineering, Inc.,* 171 B.R. 387 (N.D.Ala.1994). IRS cross-appeals the district court's award of attorney fees under § 105. We have resolved several issues which required clarification in this circuit, and we remand to the district court to assess attorney fees consistent with 28 U.S.C. §

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

[1]All citations are to the 1994 United States Code, as amended, unless otherwise noted.

2412(d)(2)(A) and 26 U.S.C. § 7430.

Initially we conclude we have jurisdiction to review the district court's order as a "final decision" under 28 U.S.C. § 1291, notwithstanding that court's remand to the bankruptcy court. We further conclude that, as amended in 1994, 11 U.S.C. § 106 unequivocally waives sovereign immunity for monetary damages under 11 U.S.C. §§ 105(a) and 362(h). However, Jove is not entitled to relief under § 362(h) because the term "individual," as used in that provision, does not include a corporation. Jove is entitled to relief under § 105(a) which, distinct from the court's inherent powers, grants the court statutory powers to enter monetary damages. An award of monetary sanctions is appropriate in this case because IRS willfully violated the automatic stay when it knew the stay was in effect and intended the actions that violated the stay, regardless whether any IRS employee had the specific intent to violate the stay. In this case, monetary sanctions are limited to actual expenses, such as attorney fees, because Jove's claim for coercive sanctions appear more punitive in nature and Congress expressly declined to waive sovereign immunity for punitive damages. We must remand to the district court to assess attorney fees consistent with both 28 U.S.C. § 2412(d)(2)(A) and 26 U.S.C. § 7430 because neither the parties nor the court addressed the criteria of these provisions.

## Facts

On October 20, 1992, Jove filed a petition for reorganization which automatically invokes the stay provision of 11 U.S.C. § 362(a). On November 6, 1992, the bankruptcy court clerk sent

notice of the case to all 413 creditors, including IRS which Jove listed as a disputed creditor.

On November 12, 1992, Ms. Judy Hibbard of IRS's Special Procedures Staff in Birmingham wrote a letter to Jove's president, Mr. Walter H. Brough, acknowledging Jove's bankruptcy filing and discussing IRS's concerns when a taxpayer files for bankruptcy. IRS forwarded a copy of this letter to Jove's attorney, Mr. Romaine Scott. On November 18, Jove's attorney wrote a letter to Ms. Hibbard requesting all future contact be directed to him instead of his client. On November 25, Jove's attorney wrote a similar letter to Ms. Hibbard which included a copy of the "notice of first meeting of creditors."

Sometime in November 1992, the IRS Birmingham office entered a computer code showing Jove filed a Chapter 11 petition. The IRS center in Memphis ("Memphis office") had access to this entry. This code did not preclude accepting payments or sending payment requests related to post-petition liability. IRS did not initially enter a computer code to "freeze" collection activities. IRS usually does not enter this bankruptcy "freeze" code because, as configured, not entering a "freeze" permits the computer system to credit post-petition payments.

Sometime after filing the bankruptcy petition, Jove filed a Form 941 tax return with the Memphis office for the tax quarter ending September 30, 1992 (all pre-petition tax liability). On December 21, the Memphis office mailed Jove a "Request for Payment" seeking to collect taxes, penalties and interest totaling $112,433.65 for a tax period occurring both pre- and post-petition.

This request warned Jove to make payment before December 31 to avoid further penalty. [2]  Although Jove's tax return was for pre-petition liability, the computer code did not preclude this request, apparently because the return was actually filed post-petition.  IRS did not explain why the computer code does not preclude collection attempts for returns filed post-petition that only reference pre-petition liability.

On January 7, 1993, Jove's attorney sent a letter to the Memphis office requesting that IRS participate in the bankruptcy process by filing a claim with the bankruptcy court.  Ms. Della Sanford, Chief of the Correspondence Section in the Memphis office, mailed a reply letter stating IRS had no record that Mr. Scott was authorized to receive information on Jove's behalf, and, in order for him to receive such information, Mr. Scott must provide a power of attorney, a tax information authorization or "other written evidence of ... [his] authority."  Forms for "power of attorney" and "tax information authorization" were included in the letter.

On March 4, 1993, IRS filed with the bankruptcy court a "Proof of Claim" against Jove for unpaid taxes, penalties and interest totaling $304,239.08.  On March 29, the Memphis office mailed a certified letter to Jove entitled "Notice of Intent to Levy—Immediate Response Required" seeking $41,745.61 in taxes, penalties and interest for the tax period ending December 31, 1992 (this quarter included 19 pre-petition days).  The letter warned further that, if payment was not received by April 28, "the law

[2]As of December 21, 1992, although there were some payments toward Jove's tax liability, there was an alleged $92,923.57 underpayment of the $139,387.77 total liability.

allows us to seize your property or rights to property such as real estate and personal property to collect the amount you still owe." On April 5, Jove's attorney mailed to the Memphis office an executed power of attorney form which IRS marked "received" on April 8. This letter reiterated information in prior letters and further stated "any further direct communications with [Jove] will be interpreted as a willful violation of the automatic stay and appropriate action will be taken." However, on April 15, IRS issued another "Notice of Intent to Levy—Immediate Response Required" requesting payment for only $3,813.91[3] and referencing the tax period ending December 31, 1992. On April 28, 1993, Jove filed a motion with the bankruptcy court to hold IRS in civil contempt for violating the automatic stay.

On May 3, 1993, the Memphis office sent Jove a letter stating IRS had no record Mr. Scott was authorized to act for Jove, and directing Jove to clear up the matter with the IRS office in Birmingham. On May 17, Jove received a notice from IRS stating "balance due on 3rd Q and 4th Q 941 returns for 1992. Plus 1992 940. Failure to keep appointment could result in enforcement action."

Jove's attorney contacted Mr. Leon F. Kelly, Jr., Assistant U.S. Attorney in Birmingham, concerning IRS's post-petition activity. In turn, Mr. Kelly contacted Ms. Hibbard's office after which, on May 23, IRS entered a computer code to "freeze" any further extra-judicial action.

---

[3]Apparently there had been further payments on the tax liability which was reduced from $41,743.61 to $3,818.91.

Ms. Martha Langston, an IRS Revenue Officer in Birmingham, received a transfer of collection responsibilities which included the Jove account. At the time, the computer system contained the November 1992 bankruptcy entry, but no "freeze" code. On June 1, 1993, Ms. Langston made an unannounced visit to Jove's place of business to discuss the balance due for the 1992 fourth quarter on Jove's 941 return. Ms. Langston left a sealed envelope for Jove's president which contained information about collection and a note warning that failing to keep an appointment could result in an enforcement action. Several days later, Ms. Langston learned Jove was in bankruptcy and the collection action was "frozen." She then canceled her appointment and closed her file.

## Proceedings Below

On April 28, 1993, Jove filed a motion with the bankruptcy court to hold IRS in civil contempt for violating the automatic stay. Jove later filed a motion to withdraw the contempt motion to district court due to concern whether the bankruptcy court had authority to rule on the contempt motion. On July 19, the bankruptcy court granted Jove's motion to withdraw the contempt motion to district court. After receiving briefs and conducting a hearing, the district court issued a memorandum opinion making findings of facts and conclusions of law. After thoroughly reviewing conflicting circuit decisions, the district court held that Jove, as a corporation, was not an "individual" entitled to relief under 11 U.S.C. § 362(h) based on (1) the plain meaning of the statute; (2) the statute's different treatment of individuals, corporations and partnerships; and (3) "the fact that § 362(h) was

adopted as a part of "Consumer Credit Amendments,' suggests that only individuals, not corporations, were intended." The district court stated that Jove is entitled to some relief under 11 U.S.C. §§ 105 and 106(b), limited to the extent of the government's claim, and precluding punitive or consequential damages which cannot be specifically determined with reasonable certainty. The district court then held that "Jove is entitled to recover *reasonable* attorney fees for the extra-judicial time *reasonably* spent in responding to the actions of the I.R.S. *which constitute* violations." (emphasis in original).

The district court reserved ruling and issued an order permitting Jove to present further proof that IRS acted maliciously because, "Regardless of sovereign immunity, § 105 would not allow for the recovery of punitive damages or consequential damages that cannot be determined with reasonable certainty; particularly for non-malicious violations.... In any event, this court's discretion would dictate to the contrary."

Upon further consideration, the district court found IRS's alleged "willful and heinous" conduct consisted of:

> (1) One mild informative letter concerning the bankruptcy procedure. There *may* have been a phone call from Hibbard to Brough concerning the same matters. This did not violate the stay.

> (2) One mild, not pursued, request for payment as to the quarter ending September 30, 1992;

> (3) Two notices of intent to levy with reference to a period, over two-thirds of which was post-petition; and

> (4) the mild visit and moderately threatening note of Ms. Langston.

*In re Jove Engineering, Inc.,* 171 B.R. 387, 392 (N.D.Ala.1994)

(emphasis in original).  The district court also noted that the November 12, 1992 letter from IRS states:

> Occasionally the Service inadvertently levies on or seizes property of the debtor subsequent to the filing of the petition for reorganization.  If a problem of this kind is encountered, please call our office immediately at (205)731-1248.  We will attempt to resolve the matter as expeditiously as possible.  In virtually every case, we can quickly release the levy.  Filing a motion to hold the Internal Revenue Service in contempt usually delays resolution of the matter.

*Jove,* 171 B.R. at 390.  The district court concluded that "all the purported violations were inadvertent and could have been remedied with a phone call.  [This court] cannot find the defendant in contempt."  *Id.* at 394.  The district court further stated:

> Even if the IRS should be held in contempt and sanctioned, the amount awarded by the court under these circumstances is sufficient.  The ignoring of the telephone number specifically given to cover the situation, the fast action once that number was contacted, the lack of any willfulness by any human being, the total overplaying of the alleged harm, the rush to file the contempt proceedings while the problem was being promptly addressed, etc. all militate against any substantial award.

*Id.* at 394-95.  Pursuant to § 105, the district court entered an order awarding Jove $500 as attorney fees to be "credited toward any amount determined to be due IRS in the bankruptcy proceedings."  *Id.* at 395.

Although the district court's order remanded the case to the bankruptcy court and the bankruptcy proceedings were still pending, Jove filed this appeal contesting the district court's denying recovery under § 362(h) and, alternatively, the court's limiting recovery under § 105 to an offset of $500 as attorney fees.  IRS cross-appeals, challenging the award of attorney fees.

Standard of Review

*A. Review of Conclusions of Law and Fact*

We exercise complete and independent review over the district court's conclusions of law. *Peterson v. Atlanta Housing Authority,* 998 F.2d 904, 912 (11th Cir.1993). We review the district court's findings of fact for clear error. *Elston v. Talladega County Bd. of Ed.,* 997 F.2d 1394, 1405 (11th Cir.1993). A district court's finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Elston,* 997 F.2d at 1405 (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

*B. Review of Civil Contempt*

A finding of civil contempt must be based on "clear and convincing evidence" that a court order was violated. *Jordan v. Wilson,* 851 F.2d 1290, 1292 n. 2 (11th Cir.1988); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1534 n. 4 (11th Cir.1986). "This ["clear and convincing' evidence standard] is more exacting than the "preponderance of the evidence' standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt."[4] *Jordan,* 851 F.2d at 1292. We review the district court's grant or denial of civil contempt for abuse of discretion. *Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512,

---

[4]"Criminal contempt sanctions are punitive in nature and are imposed to vindicate the authority of the court. On the other hand, sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986).

1516 (11th Cir.1990) (citing *Afro-American Patrolmen's League v. City of Atlanta,* 817 F.2d 719, 723 (11th Cir.1987)); *Jordan,* 851 F.2d at 1292; *Sizzler,* 793 F.2d at 1534 n. 4. "A district court abuses its discretion when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Arlook v. S. Lichtenberg & Co., Inc.,* 952 F.2d 367, 374 (11th Cir.1992). In bankruptcy proceedings, the court has discretionary statutory powers under 11 U.S.C. § 105(a) that states "The court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* (emphasis added); *In re Mroz,* 65 F.3d 1567, 1571-72 (11th Cir.1995).

Although we review the court's grant or denial of civil contempt in bankruptcy proceedings for abuse of discretion, we apply less deference in the context of an automatic stay violation. We have characterized the automatic stay of 11 U.S.C. § 362(a) as "essentially a court-ordered injunction, [and] any person or entity who violates the stay may be found in contempt of court." *Carver v. Carver,* 954 F.2d 1573, 1578 (11th Cir.), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992). Although essentially a court-ordered injunction, the automatic stay nevertheless is actually a legislative creation with unique properties different from court-ordered injunctions. As its common name suggests, the "automatic stay" arises automatically when a petition is filed, unless falling within an exception under § 362(b). In contrast, a court-ordered injunction is discretionary, not automatic, and usually does not arise until after a complainant files a separate

motion. The metes and bounds of the automatic stay are provided by statute and systematically applied to all cases. However, the metes and bounds of court-ordered injunctions are provided on a case-by-case basis by the issuing court specifically tailoring the injunction to fit the specific circumstances of the specific case. *See, e.g., Howard Johnson,* 892 F.2d at 1514; *Jordan,* 851 F.2d at 1291; *Afro-American Patrolmen's League,* 817 F.2d at 721; *Sizzler,* 793 F.2d at 1532-33.

The nature of court-ordered injunctions requires the enforcing court not only to determine whether the order was violated, but to make case specific determinations whether "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Jordan,* 851 F.2d at 1292 n. 2. In contrast, determinations (1) whether the automatic stay is valid and lawful and (2) whether the automatic stay is clear, definite and unambiguous do not vary on a case-by-case basis.

The issuance and enforcement of court-ordered injunctions typically require a case-by-case analysis over which the issuing and enforcing court is in a better position to assess than a reviewing court. However, this case-by-case variation is not as prevalent for the legislatively imposed automatic stay of § 362(a). This places the reviewing court in a position comparable to the enforcing court when considering automatic stay violations. Courts of appeal have an independent role in assessing the intent of Congress in its enactment of a statutory provision, such as the automatic stay, which is different from the assessment of a

district court's specific order, such as an injunction.  For that reason, we apply a less deferential "abuse of discretion" standard when reviewing civil contempt for an automatic stay violation than we generally would in other contexts.[5]

### Jurisdiction

The parties did not raise the issue whether we have appellate jurisdiction over the district court's order which remanded to the bankruptcy court to offset the attorney fee award against any claim by IRS.  However, we raise the jurisdiction issue *sua sponte.  In re Miscott Corp.,*  848 F.2d 1190, 1192 (11th Cir.1988);  *In re Briglevich,* 847 F.2d 759, 760 (11th Cir.1988);  *Robinson v. Tanner,* 798 F.2d 1378, 1379 (11th Cir.1986).  Upon careful review, we conclude this court has appellate jurisdiction over the district court's order as a final decision under 28 U.S.C. § 1291.

*A. No Jurisdiction of Appeal Under § 158(d)*

Under 28 U.S.C. § 158(d), this court has jurisdiction to hear all final orders from a district court that exercised appellate jurisdiction over bankruptcy court orders.  Section 158 states in pertinent part:

> (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judge under section 157 of this title....

---

[5]We do not intimate a new standard of review.  There are few, if any, bright lines concerning what constitutes an "abuse of discretion."  This standard lies within the standard of review continuum whose contours are developed on a case-by-case basis. We only hold that we are more inclined to reverse the trial court if we disagree with its decision regarding an automatic stay violation than we would be in another context.

(c) An appeal under subsection (a) ... of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsection (a) and (b) of this section.

28 U.S.C. § 158 (1993).[6]  The plain meaning of this provision grants this court jurisdiction of appeals only where the district court exercised appellate jurisdiction from a decision by a bankruptcy judge, not where the district court exercised original jurisdiction. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.").  In this case, the bankruptcy judge made no ruling, and the district court entered its orders solely under its original jurisdiction of bankruptcy cases.  Therefore, our jurisdiction does not arise from § 158(d). *United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir.1988); *In re Amatex Corp.*, 755 F.2d 1034, 1038 (3d Cir.1985).

*B. Jurisdiction of Appeal from "Final Decision" Under § 1291*

There is no specific provision granting courts of appeal jurisdiction to review orders entered by district courts exercising

---

[6]This represents § 158 prior to the 1994 amendments.  The 1994 amendments do not apply because this case was commenced prior to October 22, 1994.  Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, 108 Stat. 4150 § 702(b)(1) (set out as a note under 11 U.S.C. § 101).  However, the 1994 amendments do not appear to change our jurisdiction analysis.

their original, non-appellate bankruptcy powers. *See Metro Transportation Co. v. North Star Reinsurance Co.,* 912 F.2d 672, 676 (3d Cir.1990). However, if the district court's order is a final decision, we will have jurisdiction under 28 U.S.C. § 1291 which provides that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291; *see Metro Transportation,* 912 F.2d at 676; *In re Martin Brothers Toolmakers, Inc.,* 796 F.2d 1435, 1437 (11th Cir.1986) (jurisdiction under § 1291 where district court order remands to bankruptcy court). In the bankruptcy context, "finality" under § 1291 is viewed similarly to "finality" under § 158(d) and its predecessor, § 1293. *In re F.D.R. Hickory House, Inc.,* 60 F.3d 724, 725 n. 2 (11th Cir.1995); *In re Red Carpet Corp.,* 902 F.2d 883, 890 n. 5 (11th Cir.1990); *In re TCL Investors,* 775 F.2d 1516, 1518 (11th Cir.1985); *In re International Horizons, Inc.,* 689 F.2d 996, 1000 n. 6 (11th Cir.1982). A final decision "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *F.D.R. Hickory House,* 60 F.3d at 726.

Courts "consistently consider[ ] finality in a more pragmatic and less technical way in bankruptcy cases than in other situations." *In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir.1985); *see In re Dow Corning,* 86 F.3d 482, 487-88 (6th Cir.1996); *In re Greene County Hospital,* 835 F.2d 589, 594 (5th Cir.1988) (citing *In re Saco Local Development Corp.,* 711 F.2d 441

(1st Cir.1983)).  The Third Circuit explained:

> The rationale for viewing finality under a less rigorous standard in the bankruptcy areas is clear.  Bankruptcy cases frequently involve protracted proceedings with many parties participating.  To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

*Amatex,* 755 F.2d at 1039.  We similarly explained:

> [T]he statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation.  This accommodative approach is vital in the context of bankruptcy.  Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed.  While the goal of the bankruptcy process is to bring all present and potential contestants together and decide all the claims at the same time, a truly simultaneous resolution is impossible....  [F]inality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole....  [A]ny order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable.

*Martin Brothers,* 796 F.2d at 1437;  *see also In re The Charter Co.,* 778 F.2d 617, 621 (11th Cir.1985).

A district court's order is not deprived of its finality merely because it remands to the bankruptcy court.  This court has consistently recognized that a district court order that remands to the bankruptcy court may be a final decision if all that remains to be done by the bankruptcy court regarding the order is a ministerial duty that does not require significant judicial activity involving considerable discretion.[7]  *T & B Scottdale*

---

[7]In other cases where we determined a remand was not a final order, the remand required the bankruptcy court to exercise discretion or make further factual or legal findings.  *See, e.g., In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1029 (11th Cir.) (District court's remand order not final because bankruptcy court must consider factors to determine bad faith which is an evaluative process involving more than ministerial duties), *cert.*

*Contractors v. United States,* 866 F.2d 1372, 1375 (11th Cir.1989) (citing *In re Miscott,* 848 F.2d 1190, 1191-1192 (11th Cir.1988)); *see also Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990) (similar rule in non-bankruptcy context).

In this case, the district court order remands to the bankruptcy court to offset up to $500 against any claim by IRS. This order concerns a particular, discrete controversy concerning the automatic stay violation which is completely separable from any other controversies in the bankruptcy proceedings. Although the order remands to the bankruptcy court, the bankruptcy court need only perform the ministerial duty of offsetting up to $500 against any claim of IRS without exercising any discretion or making any further factual or legal findings. *See In re Delta Resources, Inc.,* 54 F.3d 722, 727 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 488, 133 L.Ed.2d 415 (1995). Therefore, we conclude the district court's order finding IRS violated the automatic stay and limiting remedies for the violation is a final decision within our appellate jurisdiction under § 1291.

### Sovereign Immunity

The United States may not be sued absent a waiver of its

---

*denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *In re Briglevich,* 847 F.2d 759, 761 (11th Cir.1988) (Where the district court remanded to bankruptcy court to determine amount of money paid only for necessary contract work, the order "is not a final order under § 158(d) [s]ince [it] remand[s] for more than merely mechanical or ministerial findings."); *The Charter Co.,* 778 F.2d at 621 (Order was not final where bankruptcy court still had to resolve appropriateness of cash transfers and remedies); *see also TCL Investors,* 775 F.2d at 1519 ("The district court's order ... in no way determines the merits of the case or any of the substantive rights of the parties. Until the factual record is fully developed ... the issues presented cannot be adequately presented on appeal.").

sovereign immunity. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1980). In order to be effective, "[w]aivers of the Government's sovereign immunity ... must be unequivocally expressed ... [and] are not generally to be liberally construed." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992) (internal quotations omitted). As amended in 1994, after the district court's decision in this case, 11 U.S.C. § 106 provides an unequivocal, express waiver of sovereign immunity for specifically enumerated bankruptcy provisions, stating, "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections 105, 106, ... 362 ... of this title." 11 U.S.C. § 106(a) (1994). [8] The statute provides further that "[t]he court may issue against a governmental unit an order, process, or judgment under such sections ... including an order or judgment awarding money recovery, but not including an award of punitive damages." 11 U.S.C. § 106(a)(3). However, the statute further provides that, "Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law." 11 U.S.C. §

---

[8]The 1994 amendment to this section applies retroactively to this case. Bankruptcy Reform Act of 1994, Pub.L. 103-394, 118 Stat. 4150 § 701(b)(2)(B) (set out as a note under 11 U.S.C. § 101). This amendment statutorily overruled the Supreme Court's decision in *United States v. Nordic Village,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), to the extent the Court found § 106 did not waive sovereign immunity. H.R.Rep. No. 835, 103d Cong., 2d Sess. 42 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3350; *see In re Ryan,* 64 F.3d 1516, 1519 n. 2 (11th Cir.1995).

106(a)(5).  Therefore, Jove must show that some source outside of § 106 entitles it to relief.  In this regard, Jove argues that both § 362(h) and § 105 provide independent sources of relief for IRS violating the automatic stay.

*IRS Liability Under § 362(h)*

Section 106(a) unequivocally waives sovereign immunity for § 362 which contains the automatic stay provisions.  Jove argues subsection (h) of § 362 provides an independent source of relief for IRS's violating the automatic stay.  This provision states,

> An *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (emphasis added).  Although this section clearly provides an independent source for recovery, IRS argues it does not apply in this case because Jove is a "corporation," not an "individual."

*A. Circuits Are Split Whether a Corporation is an "Individual"*

The circuit courts are equally divided whether the term "individual" in § 362(h) includes a corporation.  The Third and Fourth Circuits hold the term "individual" includes corporations, but the Second and Ninth Circuits hold the term "individual" does not include corporations.  *Compare In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (3d Cir.1990) *and Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir.1986) *with In re Goodman,* 991 F.2d 613, 619 (9th Cir.1993) *and In re Chateaugay Corp.,* 920 F.2d 183 (2d Cir.1990).

The most often cited case construing the term "individual" in § 362(h) to include a corporation is *In re Tel-A-Communications*

*Consultants, Inc.,* 50 B.R. 250 (D.Conn.1985).[9] The court stated:

> The ... question ... is whether or not Congress intended the subsection (h) sanctions to apply only in favor of individual debtors as the language of that subsection literally provides. I think not. Subsection (h) must be read with the rest of Code § 362 [which] suggests no basis for such a narrow construction. On the contrary, the automatic stay provided by Code § 362(a) was intended to give all debtors broad relief from all entities. As the legislative history of Code § 362 states:
>
> > The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> It seems highly unlikely that only individual debtors were meant to have a remedy against those who willfully violate the automatic stay designed to protect all debtors. There is no legislative history to suggest that result.

*Tel-A-Communications,* 50 B.R. at 254.

The Fourth Circuit quoted the above passage from *Tel-A-Communications* and, without any further analysis, concluded "we construe the word "individual' [within § 362(h) ] to include a corporate debtor." *Budget Service,* 804 F.2d at 292. The Third Circuit followed by simply stating, "Although Section 362(h) refers to an individual, the section has uniformly been held to be

---

[9]The impact of this case is interesting because the court's conclusion that a corporation is an "individual" is dicta—neither party contested that issue. *Tel-A-Communications,* 50 B.R. at 254 ("[T]he defendant has not claimed such a narrow reading of subsection (h) [i.e., a corporation is not an "individual']. Instead the defendant ... claim[s] that its action was not a willful violation."). We further note that *Tel-A-Communications* was decided before *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), where the Supreme Court set forth the plain meaning doctrine for construing the complex Bankruptcy Code. The *Chateaugay* line of cases rely primarily on *Ron Pair* in holding the term "individual" in § 362(h) does not include a corporation.

applicable to a corporate debtor."  *Atlantic Business,* 901 F.2d at 329 (citing *Budget Service,* 804 F.2d at 292).

The Second Circuit was the first circuit to conclude the term "individual" within § 362(h) does not include a corporation. *Chateaugay,* 920 F.2d at 186-87.  The court relied on the plain meaning of the statute, and further concluded that "even applying [the *Tel-A-Communications* ] analysis simply on its own terms ... it [is] entirely plausible that the use of the word "individual' was intentional, and that Congress was enacting a series of measures meant to benefit only natural persons."  *Id.* at 185-86.  The Ninth Circuit adopted the reasoning in *Chateaugay* and held " "individual' means individual, and not a corporation or other artificial entity."  *Goodman,* 991 F.2d at 619.  As set forth below, we agree with the reasoning in *Chateaugay* and conclude that the district court correctly held that the term "individual" in § 362(h) does not include a corporation.

B. Plain Meaning Doctrine

In *United States v. Ron Pair Enterprises, Inc.,* the Supreme Court set forth the plain meaning doctrine for construing the complex Bankruptcy Code, stating:

> Congress worked on the formulation of the [Bankruptcy Code of 1978] for nearly a decade.  It was intended to modernize the bankruptcy laws, and as a result made significant changes in both the substantive and procedural laws of bankruptcy....  In such a substantial overhaul of the [bankruptcy] system, it is not appropriate or realistic to expect Congress to have explained with particularity each step it took.  Rather, as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute....  *The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.*  In such cases, the intention of the drafters, rather than the

strict language, controls.

489 U.S. 235, 240-42, 109 S.Ct. 1026, 1030-31, 103 L.Ed.2d 290 (1989) (emphasis added) (internal quotations omitted). Therefore, we must first construe the plain meaning of the term "individual," and then determine whether applying the plain meaning is demonstrably at odds with Congress's intent. We conclude the plain meaning of the term "individual" does not include a corporation, and applying this meaning is not demonstrably at odds with Congress's intent.

*1. Plain Meaning of "Individual" Does Not Include a Corporation*—We first note that the Bankruptcy Code does not define the term "individual." However, "it should be generally assumed that Congress expresses its purposes through the ordinary meaning of the words it uses." *Escondido Mutual Water Co. v. La Jolla Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984); *National Coal Ass'n v. Chater,* 81 F.3d 1077, 1081-82 (11th Cir.1996) (Construing the plain meaning of "reimbursement"); *Financial Security Assurance, Inc. v. Tollman-Hundley Dalton, L.P.,* 74 F.3d 1120, 1124 (11th Cir.1996) (Construing the plain meaning of the term "rent" in § 552(b) of the Bankruptcy Code). Webster's New Collegiate Dictionary defines "individual" as "a particular being or thing as distinguished from a class, species or collection ... a single human being as contrasted with a social group or institution." *Webster's New Collegiate Dictionary* 581 (8th ed. 1979). Similarly, Black's Law Dictionary defines "individual" as "a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a

partnership, corporation, or association ... it may, in proper cases, include artificial persons." *Black's Law Dictionary* 773 (6th ed. 1996). As these definitions show, the term "individual" does not ordinarily include a corporation. Therefore, we conclude the plain meaning of the term "individual" in § 362(h) does not include a corporation.[10]

*2. Plain Meaning Not at Odds with Legislative Intent*—We must construe the term "individual" by its plain meaning unless such a construction presents "the rare case[ ] in which the literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters." *Ron Pair,* 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)) (internal quotations omitted).

We conclude that interpreting "individual" to exclude corporations is not at odds with Congress's intent because the Bankruptcy Code itself distinguishes between an "individual" and a "corporation," and we may reasonably assume Congress only intended § 362(h) to benefit natural persons. The Bankruptcy Code uses the term "individual" in a manner distinct from a corporation. For example, the Code defines "person" to "include[ ] individual,

---

[10]Indeed, those court's adopting the *Tel-A-Communications* analysis apparently agree that the plain meaning of the term "individual" does not include a corporation. *See Budget Service,* 804 F.2d at 292 ("[Section 362(h) ] sanctions are not limited to the relief of an "individual' *in the literal sense.*") (emphasis added); *Tel-A-Communications,* 50 B.R. at 254 ("The initial question then is whether or not Congress intended the subsection (h) sanctions to apply only in favor of individual debtors *as the language of that subsection literally provides.*") (emphasis added).

partnership, and corporation."   11 U.S.C. § 101(41).   The
*Chateaugay* court noted that "[t]hroughout the code, rights and
duties are allocated in some instances to "individuals' and in
others to "persons' ... [and the] text of ... [the bankruptcy] code
sections demonstrates that Congress used the word "individual'
rather than "person' to mean a natural person." *Chateaugay,* 920
F.2d at 184 (citing 11 U.S.C. §§ 109 and 101(39)).   A bankruptcy
court within this circuit similarly concluded that "in defining
"person,' Congress used the word "individual' to distinguish
natural persons from corporations and partnerships.  Other sections
of the Bankruptcy Code either make the same distinction or use the
word "individual' in such a way that its only intended meaning
could be a natural person."[11] *In re Georgia Scale Co.,* 134 B.R. 69,
70 (S.D.Ga.1991).

The *Tel-A-Communications* line of cases rely on the legislative

------

[11]The court listed the following examples:

> Section 101(9)(A)(i) defines corporation as an
> "association having a power or privilege that a private
> corporation, but not an individual or a partnership,
> possess."  Section 101(8) defines "consumer debt" as a
> "debt incurred by an individual primarily for a person,
> family, or household purpose."  Section 101(18) defines
> "family farmer" differently if the farmer is an
> "individual or individual and spouse," § 101(18)(A),
> than if the farmer is a "corporation or partnership," §
> 101(18)(B).  Section 101(31) gives a separate
> definition for "insider" if the debtor is an
> "individual," § 101(31)(A), rather than a
> "corporation," § 101(31)(B).  Section 101(44) defines
> "railroad" as a "common carrier ... engaged in the
> transportation of individuals ..."  Section 101(45)
> defines "relative" as an "individual related by
> affinity or consanguinity within the third degree as
> determined by the common law, or individual in a step
> or adoptive relationship within such third degree."

*Georgia Scale,* 134 B.R. at 70-71.

history of the Bankruptcy Code of 1978 to support a liberal definition of the term "individual" to include a corporation. *Tel-A-Communications,* 50 B.R. at 254. However, as the *Chateaugay* court noted, "[§ 362(h) ] was added to the code after the rest of the section was enacted ... Therefore, legislative history and construction which support broad coverage for the automatic stay imposed by § 362(a) do not necessarily apply to subsection (h), which deals only with sanctions for violating the stay." *Chateaugay,* 920 F.2d at 186. Prior to the enactment of § 362(h), sanctions for violating the automatic stay were imposed under the court's contempt powers pursuant to § 105(a) which states that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (1983);[12] *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1104 (2d Cir.1990). When enacting § 362(h) in 1984, "it is entirely possible that Congress ... chose to expand the remedies one step at a time." *Chateaugay* 920 F.2d at 186.

> Congress may well have thought that individual debtors were particularly vulnerable to violations of the stay by [those] who may ... believe that individuals are less likely than corporations to be aware of their rights under the automatic stay ... warrant[ing] an explicit code provision to punish stay violation and compensate debtors [who are] individuals.

*Id.* Therefore, in addition to the discretionary remedies already available to both individuals and corporations under § 105, it is reasonable to infer that Congress enacted § 362(h) to provide mandatory compensatory and discretionary punitive damages for

---

[12]Section 105(a) was amended in 1984 by striking the word "bankruptcy" that preceded "court." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 § 118(1) (1984).

individual debtors only. Unlike individuals, corporations are still limited to the discretionary remedies of § 105. *See In re Pace,* 67 F.3d 187, 193 (9th Cir.1995) (Damages in the form of costs and attorney's fees that are not available to non-individual under § 362(h) are available under § 105(a) as a sanction for ordinary civil contempt); *Chateaugay,* 920 F.2d at 186-87 ("For other debtors [who are not natural persons], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay."); *In re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) (Section 105 provides civil contempt powers); *In re Walters,* 868 F.2d 665, 670 (4th Cir.1989) (recognizing civil contempt power under § 105(a)); *Georgia Scale,* 134 B.R. at 73 ("§ 362(h) is not an available remedy for the corporate debtor ... Such debtor's remedies for violations of the automatic stay are provided for pursuant to the court's power of civil contempt."); *Forestry Products, Inc. v. Hope,* 34 B.R. 753 (M.D.Ga.1983).

We also note that § 362(h) was enacted under the "Consumer Credit Amendments" section of the Bankruptcy Amendments and Federal Judgeship Act of 1984 which contained a series of measures concerning only natural persons. Pub.L. No. 98-353, 98 Stat. 333, 352 (Title III, Subtitle A § 304). Therefore, it is reasonable to assume Congress intended § 362(h) to benefit natural persons only.

Of course, we need not determine whether *Tel-A-Communications* presents a more persuasive analysis of legislative intent. Even if we considered the *Tel-A-Communications* alternative more appealing, we may not stray from the plain meaning of the term "individual" because "[c]ourts are not authorized to rewrite a statute because

they might deem its effects susceptible of improvement." *Badaracco v. C.I.R.,* 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). The preceding analysis is only intended to ensure that interpreting the term "individual" in § 362(h) to mean only natural persons does not present "the *rare* case[ ] in which literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters." *Ron Pair,* 489 U.S. at 242, 109 S.Ct. at 1031 (emphasis added). Concluding otherwise, we affirm the district court's holding that Jove is not entitled to relief under § 362(h) because the term "individual" is limited to natural persons and does not include corporations or other artificial entities.

## *IRS Liability for Contempt*

Jove argues that, even if it is not entitled to relief under 11 U.S.C. § 362(h), it is entitled to relief under the court's contempt powers pursuant to 11 U.S.C. § 105. We agree, and hold that § 105 creates a statutory contempt power in bankruptcy proceedings, distinct from the court's inherent contempt powers, for which Congress unequivocally waives sovereign immunity.

### *A. Inherent and Statutory Contempt Powers*

Before determining whether § 105 provides an independent source of relief for violation of the automatic stay, we must first distinguish between the court's statutory and inherent contempt powers. In a nutshell: Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115

L.Ed.2d 27 (1991). Under § 105, Congress expressly grants court's independent statutory powers in bankruptcy proceedings to "carry out the provisions of" the Bankruptcy Code through "any order, process, or judgment that is necessary or appropriate." 11 U.S.C. § 105(a).

*1. Inherent Contempt Powers*—In *Chambers,* the Supreme Court explained that courts possess inherent powers which "necessarily result ... from the nature of their institution ... [and] cannot be dispensed with in a Court, because they are necessary to the exercise of all other[ ] [powers]." 501 U.S. at 43, 111 S.Ct. at 2132. Among these powers, "it is firmly established that the power to punish for contempts is inherent in all courts." *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132 (internal quotations omitted); *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). We recently affirmed a court's using its inherent contempt power to award attorney fees for violating the automatic stay of § 362(a). *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir.1995) (quoting *Chambers,* 501 U.S. at 49, 111 S.Ct. at 2129-30).[13]

---

[13]We noted that these inherent powers include the contempt power as well as

> the power of a federal court to control admission to its bar, punish parties for contempt, vacate its own judgment upon proof that a fraud has been perpetrated upon the court, bar a disruptive criminal defendant from the court room, dismiss an action on grounds of forum non conveniens, act sua sponte to dismiss a suit for failure to prosecute, and assess attorney's fees against counsel.

The Supreme Court made clear that these inherent powers arise independently of any statute or rule, stating:

> These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.... We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, where as each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.... [T]he inherent power of a court can be invoked even if procedural rules exists which sanction the same conduct.... [A] federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.

*Chambers,* 501 U.S. at 43-50, 111 S.Ct. at 2132-36 (internal quotations omitted).

The *Chambers* court warned that a court must "exercise caution in invoking its inherent power," stating:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.... [W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Id.* at 44-45, 50, 111 S.Ct. at 2132-33, 2136.

*2. Statutory Contempt Powers*—Distinct from the court's inherent powers are statutory contempt powers that § 105(a) grants in the bankruptcy context, stating, "The court may issue any order,

---

*Mroz,* 65 F.3d at 1575 (11th Cir.1995) (citing *Chambers,* 501 U.S. at 43-44, 111 S.Ct. at 2132).

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see Carver v. Carver,* 954 F.2d 1573, 1578 (11th Cir.), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308-09 (11th Cir.1982).  If the automatic stay provision is violated, courts generally award damages under the separate statutory contempt power of § 105. *See, e.g., In re Pace,* 67 F.3d 187, 193 (9th Cir.1995) (Damages in the form of costs and attorney's fees for willful violations that are not available to non-individual under § 362(h) are available under § 105(a) as a sanction for ordinary civil contempt); *In re Chateaugay,* 920 F.2d 183, 186-87 (2d Cir.1990) ("For other debtors [who are not natural persons], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay.").

Section 105(a) states "[t]he court may issue *any* order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a) (emphasis added).  Sovereign immunity aside, § 105 uses the broad term "any" which encompasses all forms of orders including those that award monetary relief.  The term "any" should be given this broad construction under the "settled ruled that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992).  The broad term "any" is only limited to those orders that are "necessary or appropriate" to carry out the Bankruptcy Code.  Therefore, the

plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensative or punitive, as long as it is "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See Rice v. United States,* 78 F.3d 1144, 1151 (6th Cir.1996). We must construe § 105(a) by this plain meaning unless such construction presents "the rare case[ ] in which literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). There is nothing in the Bankruptcy Code to indicate that, compared to other remedies, monetary relief under § 105 is particularly not "necessary or appropriate." Indeed, it is clear that monetary relief is "necessary or appropriate" for certain violations of the automatic stay. Although we disagree with the ultimate conclusion of the *Tel-A-Communications* line of cases, we agree with their underlying premise that a monetary remedy helps secure the fundamental protections of the automatic stay. *See In re Tel-A-Communications Consultants, Inc.,* 50 B.R. 250, 254 (D.Conn.1985). Further, Congress's enacting § 362(h) clearly shows that it considers monetary awards "necessary or appropriate" for certain automatic stay violations. Therefore, we conclude § 105(a) grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.

*B. Waiver of Sovereign Immunity for § 105*

Having determined that § 105(a) grants an independent

statutory source for monetary relief, we must consider sovereign immunity. Congress amended § 106 to waive expressly and unequivocally sovereign immunity under § 105 and other sections "to the extent set forth in this section." 11 U.S.C. § 106(a)(1). Section 106 expressly extends this waiver to permit a court to "issue against a governmental unit ... an order, process, or judgment awarding a money recovery, but not including an award of punitive damages." 11 U.S.C. § 106(a)(3). By its plain meaning, § 106(a) unequivocally waives sovereign immunity for court-ordered monetary damages under § 105, although such damages must not be punitive. Therefore, we conclude Jove may seek "necessary or appropriate" monetary relief under the district court's § 105 statutory powers for IRS violating the automatic stay.

*C. IRS in Contempt Under § 105*

When the automatic stay is violated, courts generally find the violator in contempt under 11 U.S.C. § 105 if the violation is "willful." *See In re Pace,* 67 F.3d 187, 193 (9th Cir.1995); *In re Goodman,* 991 F.2d 613, 620 (9th Cir.1993); *In re Chateaugay Corp.,* 920 F.2d 183, 187 (2d Cir.1990); *cf. In re Mroz,* 65 F.3d 1567, 1575 (11th Cir.1995) ("Invocation of a court's inherent power requires a finding of bad faith."). Regarding "willfulness," we have stated that, "[a]lthough the definition varies somewhat from context to context, willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1535 (11th Cir.1986). Other circuits find automatic stay violations willful if the violator (1)

knew of the automatic stay and (2) intentionally committed the violative act, regardless whether the violator specifically intended to violate the stay. *See Price v. United States,* 42 F.3d 1068, 1071 (7th Cir.1994) ("A "willful violation' does not require a specific intent to violate the automatic stay."); *Citizens Bank v. Strumpf,* 37 F.3d 155, 159 (4th Cir.1994) ("To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."), *rev'd on other grounds,* --- U.S. ----, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *Goodman,* 991 F.2d at 618 ("A "willful violation' does not require a specific intent to violate the automatic stay," but only that the defendant knew of the automatic stay and intended the acts that violated the stay); *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292-93 (4th Cir.1986) (Willful violation where contemnor "knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it."). We have similarly stated that "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990). The Supreme Court explained:

> The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.

*McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

In this case, the district court stated "[t]here was absolutely no malice and nothing approaching "arrogant defiance' or reckless disregard ... [a] computer was, perhaps, not finely tuned." *In re Jove Engineering, Inc.,* 171 B.R. 387, 394 (N.D.Ala.1994). The court declined to find IRS in contempt because "all the purported violations were inadvertent and could have been remedied with a phone call." *Jove,* 171 B.R. at 394. The court expressly held there were no willful violations and, "[e]ven if, technically, there were [willful violations], the circumstances do not call for punishment." *Id.* at 395 n. 20. We disagree with the trial court's holding of no willful violations.

Under the general "willful violation" test used by other circuits, IRS's conduct was in contempt because IRS (1) knew the automatic stay was invoked and (2) intended the actions which violated the stay. There is no dispute IRS knew the automatic stay was invoked based on the (i) bankruptcy court's November 6, 1992 notice; (ii) Jove's November 18 letter to Ms. Hibbard; (iii) Jove's November 25 letter to Ms. Hibbard; (iv) Jove's January 7, 1993 letter to the IRS Memphis office; (v) Jove's April 5 letter to the Memphis office; (vi) Jove's April 28 contempt motion and (vii) Mr. Kelly's May 1993 phone call to Ms. Hibbard. Further there is no dispute IRS intended the actions that violated the automatic stay, even though no particular IRS employee may have specifically intended to violate the stay. These violative actions include: (i) Memphis office's December 21, 1992 "Request for Payment;" (ii) Memphis office's March 29, 1993 "Notice of Intent to Levy—Immediate Response Required;" (iii) April 15 "Notice of

Intent to Levy—Immediate Response Required" and (iv) Ms. Langston's June 1 on-site visit and threatening note. Therefore, Jove has made a prima facie showing that IRS willfully violated the automatic stay. "[O]nce the moving party makes a prima facie showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability." *Howard Johnson,* 892 F.2d at 1516 (internal quotations omitted).

The record indicates that the district court insufficiently considered some of the relevant evidence. Its conclusion that all purported violations were inadvertent and could have been remedied by a phone call is an insufficient balancing of the circumstances that caused actual and necessary extra expense to the taxpayer.

Jove's attorney laid the basis for cooperation in his November 18, 1992 letter in response to Ms. Hibbard's letter of November 12, in which IRS not only acknowledged the bankruptcy, but acknowledged Scott's representative status by forwarding to him a copy of its letter to Jove. Thus IRS could have included at that time the request for a power of attorney that it sent two months later, in January 1993. *All* communications of record between the parties were in usual written form until May 1993. The first phone call of record was made by Mr. Scott to Mr. Kelly who then called Ms. Hibbard's office. It is not all that clear that the violations could have been remedied with a phone call from Mr. Scott to IRS. This overlooks the effect on IRS, causing the immediate freeze, attributable to the fact that there was in place a contempt proceeding, and that the phone call came from the United States

Attorney's Office.

Speaking of phone calls, the capability to communicate, in most telephone systems, works in both directions. Although Mr. Kelly did apparently promptly initiate the freeze as a result of Mr. Scott's May 1993 call, IRS was presented with several instances when it could have made a phone call itself, at least during the period of April 8, 1993, when IRS actually received Mr. Scott's power of attorney, and May 17, 1993, yet IRS continued to violate the stay for over a month, which was excessive even if there had been no computer. Ms. Langston also could have made a phone call, or at least entered into some limited discussion during her visit of June 1, 1993 adequate enough to have alerted her to the information that she obtained internally several days later. The violations were not "occasional" in this case, but were repeated.

In an operation as large and as generally efficient and cooperative as the Internal Revenue Service, it is understandable that many failures of communication may occur, especially if its computer is the culprit. However, that is a problem for IRS, especially if it is persistent and unremedied. Even if IRS's problem with equipment is due entirely to agency budgeting or legislative appropriation, in any event it is not a burden to be shifted to taxpayer or taxpayer's counsel.

We are not persuaded by IRS's attempts to avoid responsibility for its conduct by blaming its computer system for not properly "freezing" collection activities and blaming Jove for not calling IRS. We are more persuaded by a recent bankruptcy decision which similarly considered IRS violations attributed to known computer

problems.  *In re Flynn,* 169 B.R. 1007 (S.D.Ga.1994).  The *Flynn* court found IRS liable for violating the stay because "[IRS's] failure to correct known, glaring weaknesses in its internal controls which cause it to repeatedly violate the automatic stay constitutes bad faith and an arrogant defiance of the majesty of the Federal Law which has embodied 11 U.S.C. § 362 as its "fundamental protection' to debtors in bankruptcy." *In re Flynn,* 169 B.R. at 1024.  At least one commentator notes that IRS "is a frequent violator of the automatic stay provisions of the bankruptcy code" and "[d]ue to an uncooperative computer, the IRS has not adequately controlled enforcement actions against tax debtors, a shortcoming that has resulted in numerous "opportunities' for the IRS to appear before the bankruptcy courts to try and explain its repeated violations of the bankruptcy code." Matthew J. Fischer, *The Equal Access to Justice Act—Are the Bankruptcy Courts Less Equal than Others?,* 92 Mich.L.Rev. 2248, 2250-51 (1994).

Perhaps IRS's frequent violations led it to forward to debtors the following notice which includes a hotline to report violations:

> Occasionally the Service inadvertently levies on or seizes property of the debtor subsequent to the filing of the petition for reorganization.  If a problem of this kind is encountered, please call our office immediately at (205) 731-1248.  We will attempt to resolve the matter as expeditiously as possible.  In virtually every case, we can quickly release the levy.  Filing a motion to hold the Internal Revenue Service in contempt usually delays resolution of the matter.

*Jove,* 171 B.R. at 390.  This attempt to burden debtors with policing IRS's misconduct is a complete derogation of the law.  It is well settled that "[e]ach party to a court order is responsible for ensuring its own compliance with that order and for shouldering

the cost of compliance." *Sizzler,* 793 F.2d at 1535. Although whether Jove could have remedied the violations with a phone call may be relevant in assessing damages, such an inquiry is irrelevant in determining whether IRS is in contempt for violating the automatic stay. The relevant inquiry is not whether *Jove* had the ability to ensure that IRS complies with the automatic stay, but whether *IRS* had the ability to comply with the automatic stay. *Howard Johnson,* 892 F.2d at 1516 (The alleged contemnor must present evidence of "a present inability to comply that goes beyond a mere assertion of inability.") (internal quotations omitted); *Jordan v. Wilson,* 851 F.2d 1290, 1291 n. 2 (11th Cir.1988) (Must demonstrate that "the alleged violator had the ability to comply with the order."). In assessing IRS's ability to comply, "[c]onduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." *Howard Johnson,* 892 F.2d at 1516. We do not find such a good faith effort where IRS frequently violates the automatic stay, IRS knows its computer system configuration inevitably leads to violations,[14] and IRS seeks to burden debtors with policing its violations. Therefore, we conclude the district court abused its discretion by not finding IRS in contempt under § 105 for willfully violating the automatic stay.

---

[14]It appears IRS knew its computer system would inevitably lead to stay violations, although it did not know for certain which particular debtors would be harmed. Though not of equal fatality, this is akin to shooting a gun into a crowd, aware it will inevitably injure someone, although not knowing which particular person will be injured.

*D. Sanctions Under § 105*

The purpose of civil contempt sanctions is to (1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order. *EEOC v. Guardian Pools, Inc.,* 828 F.2d 1507, 1515 (11th Cir.1987); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1534 (11th Cir.1986). In this case, Jove seeks (1) actual out-of-pocket expenses it incurred in protecting its automatic stay rights and (2) severe monetary sanctions to induce IRS to cease violating the stay.

*1. Coercive Sanctions*—The district court concluded that "the circumstances do not call for punishment" *if* there were willful violations. If the elements of contempt exist subject to the statutory powers of the enforcing court under 11 U.S.C. § 105, the character of the circumstances is more properly a function of the assessment of sanctions than of the determination whether there was a violation, and therefore a contempt. Sanctions imposed for civil contempt to coerce compliance "cannot be any greater than necessary to ensure such compliance" and may not be so excessive as to be punitive in nature. *Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1304 (11th Cir.1991); *In re Trinity Industries,* 876 F.2d 1485, 1493 (11th Cir.1989). This distinction between coercive and punitive sanctions, which serves to distinguish between civil and criminal contempt, is particularly important in this case where Congress expressly declines to waive sovereign immunity for punitive damages. 11 U.S.C. § 106(a)(3). Unfortunately, there are few bright lines. *International Union v. Bagwell,* --- U.S. ----,

---- n. 3, 114 S.Ct. 2552, 2557 n. 3, 129 L.Ed.2d 642 (1994) (Noting that "[n]umerous scholars have criticized as unworkable the traditional distinction between civil and criminal contempt."). In searching for those bright lines, we are mindful of "the traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1014-15, 117 L.Ed.2d 181 (1992) (internal quotations omitted).

Sanctions are coercive if they serve the complainant rather than vindicate some public interest. *Penfield Co. v. Securities & Exchange Commission,* 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947). Sanctions are also coercive if the contemnor has the ability to control the extent of the sanction. *See Penfield,* 330 U.S. at 590, 67 S.Ct. at 921 ("One who is fined, unless by a day certain he produces the books, has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, "carry the keys of their prison in their own pockets.' "); *see also Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421, 444, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986) ("[P]etitioners could purge themselves of the contempt by ending their discriminatory practices and by achieving the court-ordered membership goal; they would then be entitled ... to recover any moneys remaining in the Fund."); *Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966) ("[T]he justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order."); *Southern Railway Co. v. Lanham,* 403 F.2d

119, 124 (5th Cir.1968) (Unconditional fine is punitive in nature because "[i]t does not permit appellant to purge itself and remove the sanction by compliance with the court's discovery order.").

In discussing the civil and criminal sanctions for indirect contempt (i.e., contemptuous acts that occur out of the court), the Supreme Court explained:

> The paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.... [T]he contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket. By contrast, a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance.... When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect. The defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense.... Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge. Thus, a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance. A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged.

*Bagwell,* --- U.S. at ---- - ----, 114 S.Ct. at 2557-58 (internal quotations omitted).

While not the exclusive distinctions between coercive and punitive awards, these considerations, (i) whether the award directly serves the complainant rather than public interest and (ii) whether the contemnor may control the extent of the award, sufficiently demonstrate that the district court did not abuse its discretion by refusing to award sanctions to induce IRS to cease

violating the stay. There is no dispute that IRS has ceased taking any actions against Jove that would violate the automatic stay. Jove apparently seeks severe monetary damages in the form of a fixed non-compensatory fine rather than "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." *Bagwell,* --- U.S. at ----, 114 S.Ct. at 2558. To award a fixed monetary sanction to induce IRS not to violate the automatic stay in the future appears punitive because it would serve the general public interest of protecting the automatic stay more than it would serve Jove's particular interest where there is no indication IRS will take any future action against Jove. Moreover, such a fixed fine would have no coercive effect because IRS could not purge itself of the sanction. *See Bagwell,* --- U.S. at ----, 114 S.Ct. at 2558 ("[A] flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."). Therefore, we affirm the district court's denying an award of non-compensatory, coercive damages.

*2. Attorney Fees*—If IRS violates the automatic stay, courts awarding attorney fees must consider provisions from three statutory schemes: the Bankruptcy Code, the Equal Access to Justice Act ("EAJA"), and the Internal Revenue Code. In considering these provisions, we are mindful of the fundamental principle of statutory construction that, "[w]hen interpreting and construing two [or more] acts that affect one particular subject matter or area, the court must attempt to reconcile the acts, if possible, so as to produce a symmetrical whole." *Columbia Gas Dev.*

*Corp. v. Federal Energy Regulatory Commission,* 651 F.2d 1146, 1158 (5th Cir.1981); *see Araya v. McLelland,* 525 F.2d 1194, 1196 (5th Cir.1976) ("[W]hen possible, statutes should be construed so as not to be in conflict with each other.").

Regarding automatic stay violations, the Bankruptcy Code provides two relevant, independent sources for awarding attorney fees, § 105(a) (discretionary) and § 362(h) (mandatory), and two relevant limitations on the sovereign immunity waiver, § 106(a)(3) (consistency with EAJA costs) and § 106(a)(4) (consistency with nonbankruptcy law). As discussed, Jove is a corporation which cannot seek relief under § 362(h), but may seek several forms of relief under § 105(a) including attorney fees. Further, Congress's unequivocal waiver of sovereign immunity specifically provides that an "order or judgment for *costs or fees under this title* or the Federal Rules of Bankruptcy Procedure against any governmental unit *shall be consistent with* the provisions and limitations of *section 2412(d)(2)(A) of title 28* [defining "fees and other expenses' under EAJA]." 11 U.S.C. § 106(a)(3) (emphasis added). Therefore, the plain meaning of the statute requires an award of attorney fees under the statutory powers of § 105(a) to be consistent with § 2412(d)(2)(A) which defines those "fees and other expenses" that may be awarded under EAJA.[15]

---

[15]Section 2412(d)(2)(A) was recently amended by § 232(b)(1) of the Contract with America Advancement Act of 1996 by striking "$75" and inserting "$125." Pub.L. No. 104-121, 110 Stat. 847, 863 § 232(b)(1) (Judicial Proceedings under Subtitle C—Equal Access to Justice Act Amendments) (enacted March 29, 1996). Although the issue is not before us, we note that this amendment probably does not apply in this case because § 233 of the Act states, "The amendments made by section[ ] ... 322 [sic?] shall apply to civil actions and adversary adjudications commenced on

The district court's memorandum supporting its first order states that "Jove's claim for attorney fees is made pursuant only to 11 U.S.C. § 105 and § 362(h).  It does not claim fees pursuant to 26 U.S.C. § 7430."  Section 7430 is an Internal Revenue Code provision waiving sovereign immunity for costs and fees "[i]n any ... court proceeding which is brought ... against the United States in connection with the ... collection ... of any tax, interest, or penalty."  Unlike the EAJA, the § 106 sovereign immunity waiver is not limited to proceedings to which § 7430 does not apply.  *See* 28 U.S.C. § 2412(e) ("The provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1986 applies.").  However, the § 106 waiver does require that "[t]he enforcement of any such order, process, or judgment against any governmental unit *shall be consistent with appropriate nonbankruptcy law* applicable to such governmental unit."  11 U.S.C.

---

or after the date of the enactment of this subtitle."  110 Stat. at 864.  The pre-amendment text of § 2412(d)(2)(A) reads as follows:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States;  and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.).

§ 106(a)(4) (emphasis added).  The plain meaning of the statute waives sovereign immunity for attorney fees awarded pursuant to the court's § 105 statutory powers, but such awards must be consistent with § 7430.  Therefore, we conclude that a district court exercising its discretion to award attorney fees under § 105 must consider the criteria of § 7430.  *Cf. In re Cascade Roads, Inc.,* 34 F.3d 756, 767-69 (9th Cir.1994) (Award of costs and attorneys fees must be made pursuant to § 7430 because contempt proceeding against IRS for violating the automatic stay is "in connection with" the determination and collection of taxes).  The district court here did not address § 7430 criteria because Jove expressly declined to seek relief under that code provision.  Further, the court did not address § 2412(d)(2)(A) because § 106 did not reference that code provision until it was amended which occurred after the district court's decision in this case.  The district court clearly has discretion in assessing the damages under 11 U.S.C. § 105, but since the record does not reflect whether the award is appropriate in consideration of all applicable provisions, we must remand this case to the district court to award attorney fees pursuant to § 105(a) and consistent with § 7430 and § 2412(d)(2)(A).

### Conclusion

We conclude that we have jurisdiction to review the district court's order as a "final decision" under 28 U.S.C. § 1291 notwithstanding the court's remand to the bankruptcy court.  We affirm the district court's conclusion that Jove is not an "individual" entitled to relief under 11 U.S.C. § 362(h), but Jove may seek discretionary relief under the statutory powers of 11

U.S.C. § 105(a) which are distinct from the court's inherent powers. The district court abused its discretion by not finding IRS in contempt—IRS wilfully violated the automatic stay because it knew the automatic stay was in effect and intended the actions which violated the stay, regardless whether any particular IRS employee had the specific intent to violate the stay. The district court did not abuse its discretion in declining to award severe monetary sanctions to coerce IRS into complying with the automatic stay because Jove seeks a fixed, unconditional fine which is punitive in nature, not merely coercive, and Congress expressly declines to waive sovereign immunity for punitive damages. The court has discretion to award attorney fees under § 105(a), but such awards must be consistent with 28 U.S.C. § 2412 and 26 U.S.C. § 7430. We remand to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.