**In re Murray WILLIAMS and
Judy Williams, Debtors.**

**Bankruptcy No. 95–50444.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

June 18, 1997.

Wesley J. Boyer, Macon, GA, for Debtors.

John T. McGoldrick, Jr. & Robert A. Weber, Jr., Martin, Snow, Grant & Napier, Macon, GA, Joel D. Burns, Milledgeville, GA, for Movants.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Joint Motion for the Enforcement of this Court's Order for a Finding of Civil Contempt by Debtors, and for the Imposition of Additional Sanctions. The Motion was filed by Empire Financial Services, Inc. and Thomas & Howard Company ("Movants"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

Murray C. Williams and Judy Williams ("Debtors") filed a Chapter 11 petition on February 15, 1995. This Court entered a Cash Collateral Order on May 5, 1995. On September 1, 1995, Movants filed a joint motion to find Debtors in contempt for failure to comply with the Cash Collateral Order. On September 14, 1995, Debtors voluntarily converted the Chapter 11 case to Chapter 7. A hearing on the joint motion was held on October 24, 1995. The Court granted Discharge in the Chapter 7 case on December 27, 1995. Subsequently, in an Order entered on January 26, 1996, the Court found Debtors liable for contempt, and, in accordance with that Order, sanctions were imposed.

The issue at hand stems from a second joint motion filed by Movants on December 10, 1996. This Motion seeks enforcement of the Court's January 26, 1996 Order. Specifically, this Motion requests the following:

(a) That the Court set attorney fees as referred to in the January 26, 1996 order and further award movants attorney fees reasonably incurred in bringing this motion to the Court;

(b) That the Court assess additional sanctions and penalties against the Debtors for their conduct prior to May 9, 1995, as the impediment to such a finding has been removed by reason of the consent order settling the adversary proceeding;

(c) That the Court order Debtors to be placed in the custody of the United States Marshal until such time as Debtors have complied with the orders of this Court; [and]

(d) That the Court specify the payment of $1,850.00 as misappropriated rental payments addressed in paragraph 1 of its previous order be paid to EFS, and that the $5,000.00 specified in paragraph 2 of its order be paid in equal amounts to EFS and T & H.

In the January 26, 1996 Order, the Court did not specify which of the two Movants was to receive the $1,850 payment for misappropriated rent. In addition, the Court did not specify how to divide between Movants the sum of $5,000 awarded to compensate for decline in inventory value. In accordance with the stipulations by Movants at a hearing held on February 19, 1997, the $1,850 award is to be paid solely to Empire Financial Services, Inc. ("EFS"), and the $5,000 award is to be divided equally between EFS and Thomas & Howard Company.

Debtors made their first payment in compliance with the January 26, 1996 Order in April of 1996. On April 1, 1996, Mr. Williams underwent surgery to repair ruptured discs in his spine. On August 22, 1996, Mr. Williams had a second surgery to repair the ruptured discs. On August 24, 1996 Mr. Williams had a heart attack for which he underwent two further surgeries. At some point, between April of 1996 and August of 1996, Debtors informed their attorney that they were unable to continue making payments in accordance with the January 26, 1996 Order. No action was taken by Debtor's attorney to request modification of the contempt order. The only reason the issue is now before the Court is because on December 10, 1996, after eight months with no payments, Movants filed the Motion now under consideration.

## Conclusions of Law

Movants seek enforcement of this Court's January 26, 1996 Order holding Debtors in contempt and imposing sanctions. In addition, Movants contend that Debtors should be held in further contempt, and that additional sanctions should be imposed for their failure to comply with that Order. In this context, Movants ask that Debtors be placed in the custody of the United States Marshal until such time as they comply with the previous contempt order.

In response, Debtors assert two defenses. First, Debtors contend that the obligations imposed on them by the Court's Contempt Order were in the nature of debt which was discharged by the December 27, 1995 Discharge Order entered in their Chapter 7 case. Further, Debtors contend that Movants cannot seek to have the debt determined to be nondischargeable because the time for filing such an adversary has passed. Second, Debtors argue that they were unable to pay

their liabilities in full under the January 26, 1996 Order because of a negative change in their financial position caused by Mr. Williams' surgeries.

### Discharge Defense

Debtors argue that the debt was discharged, that any attempt to pursue the debt would violate the discharge injunction of 11 U.S.C. § 524(a), and that Movants' Motion should be denied. This assertion is founded in Bankruptcy Code section 348(d). That section states the following:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d). Debtors contend that since the January 26, 1996 Order was based upon contemptuous acts which occurred after the order for relief in the chapter 11 case, but before the date of conversion to chapter 7, the amounts due under that Order create a claim which should be deemed to have arisen immediately before the date of the filing of the petition in accordance with section 348(d) [1]. Thus, Debtors argue, the debt is discharged by the chapter 7 discharge granted on December 27, 1995. The Court does not agree.

■ Debtors mischaracterize the debt in question here. The present joint motion for further contempt does not seek sanctions for failure to comply with the Cash Collateral Order. Rather, the alleged contemptuous act here under consideration is Debtors' failure to comply with the January 26, 1996 Order. While it is true that the liabilities imposed by that Order were related to acts and omissions which occurred at a time when debts were subject to discharge, the January 26, 1996 Order created a separate claim for Movants which arose on the date the Order was entered. Furthermore, any claim for additional sanctions based upon the failure of Debtors to comply with that Order arose both post-petition and post-discharge.[2] Thus, Debtors' discharge defense does not have merit. Likewise, the issue as to Movants' failure to file a timely objection to discharge is without merit.

### Inability to Pay as a Defense

Debtors contend that they failed to comply with the January 26, 1996 Order because of special circumstances arising from a number of surgeries to repair ruptured discs in Mr. Williams' back and neck and to repair damage caused by a heart attack. Debtors assert that these medical problems caused an inability to pay the amounts ordered. This explanation cannot serve as a complete defense.

■ The Court agrees that Debtors' change in circumstances created an inability to pay, in full, the sanctions as imposed. However, this change in financial condition does not permit Debtors to simply cease making payments without seeking relief from the Court's Order. Debtors testified that they informed their attorney of their situation. Debtors testified further that the attorney indicated that he would take care of the problem. The proper procedure would have been to file a motion with the Court to modify the award of sanctions. No such motion has ever been filed. The Court will not now consider Debtors' presentation at the February 19, 1997 hearing to be such a request for relief. Such a procedure would

---

1. The contemptuous acts for which Debtors were sanctioned in the January 26, 1996 Order took place between May 5, 1995 (the date the chapter 11 cash collateral order was entered) and September 1, 1995 (the date Movants filed their joint motion for civil contempt). Thus, these contemptuous acts occurred after the order for relief in the chapter 11 case (the petition was filed on February 15, 1995) and before the date of conversion to chapter 7 (Debtors voluntarily converted to chapter 7 on September 14, 1995).

2. Debtors failure to comply with the January 26, 1996 Order began in May of 1996 when they first failed to make a payment in accordance with that Order's terms. Thus, that contemptuous act fell post-petition (even with the petition date constructively deemed to be September 14, 1995 by section 348(d)) and post-discharge (discharge was granted on December 27, 1995).

discourage, not encourage, compliance with orders of this Court.

Debtor's attorney's inaction in this case is regrettable. However, the fact remains that Debtors did not comply with the January 26, 1996 Order. Since Debtors had the ability to pay at least a portion of the sanctions imposed, reliance on the attorney's assurance that he would take care of the matter cannot be accepted as a complete defense.

### Contempt

■ The distinction between civil and criminal contempt has long been a difficult issue for bankruptcy courts. Recognizing that the distinguishing characteristics between the two forms of contempt are somewhat unclear, the United States Supreme Court held that "a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant.'" *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 827–28, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994) (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). On the other hand, a contempt sanction is criminal if it is "'punitive, to vindicate the authority of the court.'" *Id.* The Eleventh Circuit recently elaborated on the issue by stating the following:

> [t]he purpose of civil contempt sanctions is to (1) compensate the complainant for losses and expenses incurred because of the contemptuous act, and (2) to coerce[3] the contemnor into complying with the court order.

*Jove Eng'g, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1557 (11th Cir.1996) (footnote added). The court also explained that criminal contempt, on the other hand, is punitive in nature and intended to vindicate some public interest, rather than the interest of the complainant. *See id.* at 1558.

■ In addition to the distinctions between civil and criminal contempt, there is the issue of the bankruptcy court's inherent power and the extent to which it supplements the court's statutory contempt powers. In *Jove Eng'g,* the Eleventh Circuit held that bankruptcy courts have both inherent and statutory contempt powers. Specifically, the court stated that "[c]ourts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases.'" *Jove Eng'g,* 92 F.3d at 1553 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). Regarding a bankruptcy court's statutory contempt powers, the court stated that "[d]istinct from the court's inherent powers are statutory contempt powers that § 105(a) grants in the bankruptcy context." *Jove Eng'g,* 92 F.3d at 1554. Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). When exercising these contempt powers, courts should first look to their statutory authority to do so. *Id.* However, if the statute is not "up to the task, the court may safely rely on its inherent power." *Id.* (quoting *Chambers,* 501 U.S. at 44–45, 50, 111 S.Ct. at 2132–33, 2136). *Jove Eng'g,* specifies that section 105(a) of the Bankruptcy Code empowers bankruptcy courts to hear civil contempt matters. *See* 92 F.3d at 1557–58. The Circuit Court holds that criminal contempt powers, however, cannot be derived from section 105(a).[4] *Id.* Furthermore, in a subsequent opinion, the Eleventh Circuit stated, in the context of an analysis of section 105(a), that a bankruptcy court cannot impose punitive, fixed, non-compensatory fines. *Hardy v. United States,* 97 F.3d 1384, 1390 (11th Cir.1996).

■ In *Jove Eng'g,* the Eleventh Circuit discussed, at length, the distinction between

---

3. According to the Eleventh Circuit, "[s]anctions are coercive if they serve the complainant rather than vindicate some public interest.... Sanctions are also coercive if the contemnor has the ability to control the extent of the sanction." *Jove Eng'g. Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1558 (11th Cir.1996).

4. Section 105(a) provides enforcement powers "to carry out the provisions of [title 11]." Civil contempt sanctions are appropriate for carrying out the provisions of the Bankruptcy Code. Criminal contempt sanctions, however, do not appear to serve that purpose. Criminal contempt sanctions better serve the purpose of vindicating some public interest. *See Jove Eng'g,* 92 F.3d at 1558.

civil and criminal contempt. This distinction, however, does not appear to be made for the purpose of holding that bankruptcy courts cannot exercise criminal contempt powers pursuant to the court's inherent power. Rather, the distinction is important in the context of the Eleventh Circuit's discussion of section 106 of the Bankruptcy Code. In *Jove Eng'g*, the debtor sought to hold the Internal Revenue Service in contempt for violating the automatic stay. A critical question in the case was whether the United States had unequivocally expressed its intent to waive sovereign immunity such that it could be a proper defendant in the contempt action.[5] Accordingly, the court examined section 106 to determine whether Congress had waived the government's sovereign immunity for contempt actions arising out of a violation of the automatic stay.

The court held that section 106 provided an unequivocal, express waiver for a number of specifically enumerated bankruptcy provisions but noted that the section provides that "[t]he court may issue against a governmental unit an order, process, or judgment under such sections ... including an order or judgment awarding money recovery, *but not including an award of punitive damages.*" *Jove Eng'g*, 92 F.3d at 1549 (quoting 11 U.S.C. § 106(a)(3) (emphasis added by this Court)). This point appears to be vital to a proper understanding of *Jove Eng'g*. The lengthy analysis of the distinction between civil and criminal contempt does not point to the conclusion that bankruptcy courts could not hear criminal contempt matters. Instead, the court seems to be concerned with the question of whether the sanctions are civil or criminal because of the fact that any

finding of contempt against the Internal Revenue Service would have to be limited to civil contempt since Congress had unequivocally waived the United States' sovereign immunity only with respect to civil, not criminal, proceedings. Specifically, the court stated that "[t]his distinction between coercive and punitive sanctions, which serves to distinguish between civil and criminal contempt, is particularly important in this case where Congress expressly declines to waive sovereign immunity for punitive damages." *Jove Eng'g*, 92 F.3d at 1558.

In *Hardy*, the Eleventh Circuit stated that "[t]he court may only impose sanctions for contempt that are coercive and not punitive." 97 F.3d at 1390. This Court does not interpret that holding to mean that bankruptcy courts are prohibited from exercising criminal contempt powers. Once again, the defendant in *Hardy* was the United States. Thus, in a case controlled by the sovereign immunity issue, the Eleventh Circuit held that the bankruptcy court could not impose criminal contempt sanctions against the United States. Moreover, the holding falls under a heading labeled "Sanctions Available Under § 105." The nature of sanctions available under section 105 necessarily preclude criminal contempt.

In the wake of the *Jove Eng'g* and *Hardy* cases, it remains unclear whether the Eleventh Circuit has endorsed the exercise of criminal contempt powers by the bankruptcy court based upon inherent powers. Moreover, examination of the unusual legislative history behind a bankruptcy court's contempt powers further complicates the question.[6]

---

5. The United States may not be sued unless it has waived its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980). "In order to be effective, '[w]aivers of the Government's sovereign immunity ... must be unequivocally expressed ... [and] are not generally to be liberally construed.'" *Jove Eng'g*, 92 F.3d at 1549 (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992)).

6. The Bankruptcy Reform Act of 1978 granted powers of equity, law and admiralty to bankruptcy courts, but stated that such courts could not punish for criminal contempt which did not oc-

cur in the presence of the bankruptcy judge. 28 U.S.C. § 1481 (1978). Several years later, the United States Supreme Court invalidated the jurisdictional grant of the 1978 Act. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Just one year later, the Bankruptcy Rules were revised. After the revision, Rule 9020, then titled "Criminal Contempt Proceedings", provided, inter alia, for the following: (1) summary disposition of criminal contempt in the presence of the bankruptcy judge, (2) disposition of criminal contempt occurring outside the presence of the bankruptcy judge only after a hearing on notice, and (3) certification of facts to the district court where criminal contempt occurred

The 1987 Advisory Committee Note to Rule 9020 provides a good overview of the clouded legislative history by stating the following:

> The United States Bankruptcy Courts, as constituted under the Bankruptcy Reform Act of 1978, were courts of law, equity, and admiralty with an inherent contempt power, but former 28 U.S.C. § 1481 restricted the criminal contempt power of bankruptcy judges. Under the 1984 amendments, bankruptcy judges are judicial officers of the district court, 28 U.S.C. §§ 151, 152(a)(1). There are no decisions by the courts of appeals concerning the authority of bankruptcy courts to punish either civil or criminal contempt under the 1984 amendments. This rule, as amended, recognizes that bankruptcy judges may not have the power to punish for contempt.

Although, the Eleventh Circuit, in *Jove Eng'g* and *Hardy* have addressed the issue of a bankruptcy court's power to impose sanctions for civil contempt, neither the United States Supreme Court nor the Eleventh Circuit has ruled upon the issue of whether bankruptcy courts have inherent power to impose sanctions for criminal contempt for conduct occurring outside the presence of the bankruptcy judge.

 Whether the contempt is criminal or civil, Rule 9020 provides the essential safeguards. Neither *Jove Eng'g* nor *Hardy* spoke of the importance Rule 9020 plays in the contempt process. The distinction between civil and criminal contempt appears to have no procedural significance in this context. Whether the contempt is civil or criminal, the contempt order entered by the bankruptcy court

shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

Fed. R. Bankr.P. 9020(c). Rule 9033 provides the guidelines for review of non-core proceedings heard by the bankruptcy court pursuant to 28 U.S.C. § 157(c)(1). When properly objected to, the standard of review is as follows:

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact and conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed. R. Bankr.P. 9033(d). The Rule makes no distinction between review of a criminal contempt order and a civil contempt order. In either event, the district judge, upon objection, reviews the court's order on a de novo basis as proposed findings of fact and conclusions of law. Thus, the characterization of the contempt as civil or criminal may only be significant for purposes of the notice required by Federal Rule of Bankruptcy Procedure 9020.[7] A logical reading of Rule indicates that any exercise of a bankruptcy court's contempt power will be subject to

---

outside the presence of the bankruptcy judge. *Collier on Bankruptcy* ¶ 9020.RH[2], at 9020–9 to 9020–10. In 1984, title 28 was revised in response to the Supreme Court's holding in *Northern Pipeline*. Section 151 of that title defines bankruptcy courts as "units" of the district courts. Section 157(a) provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Unlike in the 1978 Act, there is no mention of any limitation on a bankruptcy court's power to hear contempt proceedings. Finally, in 1987, Federal Rule of Bankruptcy Procedure 9020 was revised. The title of

the Rule was changed from "Criminal Contempt Proceedings" to simply "Contempt Proceedings." In addition, all specific references to procedures to be followed in criminal contempt proceedings were eliminated with the exception that notice for a hearing to be held for contempt committed outside the presence of the bankruptcy judge shall "describe the contempt as criminal or civil...."

7. Rule 9020(b) provides that for contempt committed outside the presence of the bankruptcy judge, "notice [of the hearing] shall ... *describe the contempt as criminal or civil*...." Fed. R. Bankr.P. 9020(b) (emphasis added).

immediate supervision by the district court upon objection. Thus, any sanctions imposed based on a finding of contempt by a bankruptcy court as to conduct occurring outside the presence of a bankruptcy judge cannot stand in the face of objection without review by the district court because both civil and criminal contempt orders are subject to the procedural safeguards of Rule 9020.

District court supervision is an important policy element inherent in this rule. But there is another aspect which may be equally important. At the conclusion of a hearing where the bankruptcy court imposes sanctions for civil and/or criminal contempt, the contemnor has a valuable choice. If the decision is thought to be unfair or unsatisfactory for any reason, contemnor has ten days to opt for de novo review in the district court. But equally important is contemnor's option to accept the bankruptcy court's ruling, thereby concluding the matter. This might be regarded as a valuable right to a party whose sole objective is the rendering of a prompt judicial determination. This option would not be available if the bankruptcy courts were powerless to consider matters of criminal contempt. In other words, nothing in the way of district court supervision and jurisdiction is lost in this procedure because the contemnor, not the bankruptcy court, determines whether the matter will be concluded by the order of the bankruptcy court or the district court. The supersedeas nature of Federal Rule of Bankruptcy Procedure 9020 makes the contemnor's option convenient and complete.

■ Turning to this case, Rule 9020(b) provides that contempt committed outside the presence of the bankruptcy judge

> may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the

essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense.

Fed. R. Bankr.P. 9020(b). Debtors were provided notice of the hearing on the present matter through service of a copy of Movants' joint motion filed on December 10, 1996. In the title of the Motion itself, Movants ask for a "Finding of Civil Contempt." The remedies sought by Movants are, likewise, more akin to civil contempt than criminal contempt in that compliance with the court's previous order seems to be the primary objective. But the evidence and arguments offered by Movants indicated that punishment for previous noncompliance was an additional objective. This latter element is distinctly criminal in nature. Since Debtors were given no notice, in compliance with the procedural safeguards of Rule 9020, of an intention to pursue any criminal contempt action, this Court will only consider the properly noticed civil contempt aspects of this case.[8] Thus, the Court will only consider (1) what order can be entered to coerce compliance and (2) what award can be given to compensate Movants for previous non-compliance.

Debtors can comply with the January 26, 1996 Order by either paying the amounts due or by filing an appropriate motion requesting relief from that Order's provisions. An Order will be entered requiring that Debtors perform one or the other of these alternatives within ten days of the entry of the Order. Upon failure of Debtors to comply with the terms of the Order, further sanctions will be imposed at the rate of fifty dollars per day until such time as compliance with the terms of the Order shall be accomplished or until further order of the court.

---

8. At this time it is impossible for Debtors to do what should have been done, i.e., either pay the sums due under the January 26, 1996 Order or file a motion for relief from or modification of that Order. If Debtors are to be now punished for that failure in addition to being coerced into compliance with the Order, such a punishment would be in the nature of a finding of criminal contempt. No such finding is possible because Debtors did not receive any notice, under the guidelines of Rule 9020, that any sanctions other than those civil in nature were to be sought. Thus, this Court is without authority to impose any criminal sanctions at this time. Therefore, any conclusions stated in this order as the Bankruptcy Court's authority to impose sanctions for criminal contempt would be in the nature of dicta. This is unfortunate because the law in this area is in urgent need of the kind of clarification that would result from an appeal of such a decision.

Having addressed the notion of coercion, the Court turns next to the matter of compensation for violation of the Court's January 26, 1996 Order. In this regard, Movants have demonstrated that they have incurred $750 in attorney fees. That amount will be awarded to Movants as sanctions against Debtors pursuant to the Order accompanying this opinion.

The parties are advised that the provisions of this Memorandum Opinion and accompanying Order are subject to Rule 9020. Thus, the Order entered in accordance with this opinion will not be effective until ten days have passed without objection by Debtors.

This ruling is not intended to preclude any motion or other request for the imposition of criminal sanctions based upon Debtors' failure to comply with the Court's previous contempt order. Any such request would have to comply with the provisions of Rule 9020, including the requirement that Debtors be specifically advised of the criminal nature of the sanctions being sought. Because of Debtor's medically and financially distressed circumstances, no such proceeding will be initiated by the Court sua sponte.

An order in accordance with this opinion will be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered on this date, it is hereby

ORDERED that the amount of $1,850 in misappropriated rent which Murray Williams and Judy Williams ("Debtors") were to pay in accordance with this Court's January 26, 1996 Order is to be paid solely to Empire Financial Services, Inc. ("EFS"); it is hereby further

ORDERED that the amount of $5,000 as compensation for decline in inventory value which Debtors were to pay in accordance with this Court's January 26, 1996 Order is to be paid to EFS and Thomas & Howard Company ("T & H") in equal amounts ($2,500 each); it is hereby further

ORDERED that Debtors are found to be in civil contempt for their failure to comply with this Court's January 26, 1996 Order imposing sanctions for failure to comply with the Cash Collateral Order entered on May 5, 1995; it is hereby further ORDERED that Debtors must, within ten days of the entry of this Order, either (1) pay the amounts due under that January 26, 1996 Order or (2) file an appropriate motion requesting relief from that Order's provisions; it is hereby further

ORDERED that upon failure of Debtors to comply with the terms of the Order, further sanctions will be imposed at the rate of fifty dollars per day until such time as compliance with the Order shall be accomplished or until further order of the Court; it is hereby further

ORDERED that Debtors must pay $750 to EFS and T & H ($375 each) as compensation for attorney fees incurred in pursuing this matter.