### In re Julian P. BURKE, Debtor.

### No. 01–11253.

United States Bankruptcy Court,
S.D. Alabama.

Aug. 8, 2001.

Donald R. Seymore, pro se.

Michael B. Smith, Mobile, AL, for Debtor.

A. Richard Maples, Jr., Mobile, AL, for trustee.

## ORDER DENYING MOTION FOR SANCTIONS AGAINST DEBTOR AND COUNSEL

MARGARET A. MAHONEY, Chief Judge.

This case is before the Court on the motion of Donald R. Seymore, a creditor, for sanctions against the debtor and his counsel. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order.

### FACTS

Julian Burke has been in three bankruptcy cases since May 23, 2000–a chapter 13, a chapter 11 and a chapter 7 case. The chapter 13 and 11 cases were filed and dismissed as follows:

Chapter 13 Case No. 00–12008–MAM–13

Filed May 23, 2000

Dismissed August 18, 2000

Chapter 11 Case No. 00–13373–WSS–11

Filed August 25, 2000

Dismissed March 2, 2001

The chapter 7 case is still pending:

Chapter 7 Case No. 01–11253–MAM–7

Filed March 14, 2001

Pending

Mr. Burke retained Michael B. Smith as his counsel in the chapter 11 and 7 cases. At filing of his chapter 11 case, one form filed was the "Disclosure of Compensation of Attorney for Debtor" certified by Michael Smith on August 14, 2001.

It stated that Mr. Smith had received prior to the signing of the statement $1,200 from the debtor. The form stated that "[t]he source of the compensation paid to me was ... Debtor." On October 30, 2000, Julian Burke amended his Statement of Affairs, at question 9, to show Michael Smith was paid $500 on August 1, 2000 and $750 on August 18, 2000 or a total of $1,250. The answer also disclosed that "$3,400.00 remains in Trust Account."

At the first meeting of creditors on January 9, 2001, Mr. Seymore asked Mr. Smith about his fees.

MR. SEYMORE: Three months into our bankruptcy proceeding here—

MR. SMITH: Uh-huh.

MR. SEYMORE:—you listed your fees as $1,200 plus $800 for his filing and signed statements. So money received from Julian Burke.

MR. SMITH: Uh-huh.

MR. SEYMORE: Three months later you come up with thirty-four hundred dollars in the trust fund account. Where did that come from:

MR. SMITH: The amount listed was a total of $5,000. Out of that, we had to pay the court $830.00.

MR. SEYMORE: Uh-huh.

MR. SMITH: I had done about seven or eight hundred dollars worth of work before this was filed. So I paid myself that. The balance that's listed on the schedules is what's in the trust account.

MR. SEYMORE: Well, the original that I was looking at listed you showing as $800.00 filing fee.

MR. BEDSOLE: Oh, he had—

MR. SEYMORE: Twelve hundred and something retaining you. And three months later, here comes this thirty-four hundred dollars in a trust account that you missed on your amended schedule.

MR. SMITH: You'll have to show me what you're talking about so I can explain it to you.

\* \* \* \* \* \*

MR. SMITH: At the very beginning of me representing Mr. Burke, he paid me $500 to get all his stuff together. Then we finally determined that he needed—that we got the injunction from the Chapter 13 listed and got the Court's permission to actually file a Chapter 11. So we did the—we did the work, the groundwork for getting all the stuff together for the Chapter 11. So that would have been the $700. So those two totals would have been twelve—that would have been the twelve hundred dollars that I listed that he had previously paid me that we put on the original aspect of it. The remainder of the money that he— The remainder of the $5,000, the difference between the—if you subtract out the eight hundred dollar filing fee—Was it eight thirty?

MR. SEYMORE: I believe it is eight thirty.

MR. SMITH: Subtract out the eight thirty and the seven hundred or seven fifty that—from that, yields whatever I've got down—

MR. BEDSOLE: That's the prepetition work was seven fifty?

MR. SMITH: Plus five.

MR. BEDSOLE: Five hundred?

MR. SMITH: He originally came to see me. He gave me—paid me five hundred dollars.

MR. BEDSOLE: Yep.

MR. SMITH: That was when the Chapter 13 had been—

MR. BEDSOLE: I see the twelve hundred in here right at the beginning. Okay.

MR. SMITH: Then he paid me a total of $5,000, of which I paid myself $700.00 for doing all the work for the Chapter 11 before it was filed. And then out of that we took the $830.00

filing fee, and that leaves the balance of whatever it says on—it said on the petition, three thousand, thirty-two hundred.

MR. BEDSOLE: Has he paid you a total of $5,000?

MR. SMITH: $5,000 plus $500.

MR. BEDSOLE: Plus $500. Okay. So he's paid you fifty-five hundred dollars?

MR. SMITH: I've only received twelve hundred.

MR. BEDSOLE: All right.

\*   \*   \*   \*   \*   \*

MR. SEYMORE: Well, the only question I had is why it was three months after the original filing it appears.

MR. SMITH: Probably because I realized we hadn't put it in there and it needed to be in there.

The chapter 11 case was dismissed on March 2, 2001. On March 5, 2001, Mr. Smith removed the $3,400 from the trust account and paid his outstanding postpetition bill and used the rest of it to pay Mr. Burke's chapter 7 filing fee.

In the "Disclosure of Compensation of Attorney for Debtor" filed on March 14, 2001 in the Chapter 7 case, Mr. Smith disclosed that he had been paid no funds and had agreed to accept no fees for the case. Mr. Seymore has filed a motion for sanctions alleging that the first disclosure in the chapter 11 was wrong and Mr. Burke fraudulently and intentionally concealed assets, particularly because, as asserted by Mr. Seymore, Julian Burke shows only $100 in cash on his schedules and negative cash flow. He asserts that Michael Smith did not originally list a $3,400 trust account and at the first meeting of creditors indicated he had been paid only $1,200. Also Mr. Seymore alleges that the trust account was not disclosed in the chapter 7 case when filed and Mr.

Smith never filed any request for approval of fees from the Court.

## LAW

No sections of the Bankruptcy Code or Rules are cited as a basis for Mr. Seymore's sanctions request. The Court assumes that the applicable sections must be 11 U.S.C. § 105 and/or Fed. R. Bankr.P. 9011.

Section 105 of the Bankruptcy Code provides:

The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Fed. R. Bankr.P. 9001 provides:

(a) Signature. Every petition, pleading ... and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name.

. . .

(b) Representations to the Court. By presenting to the Court (whether by signing, submitting, or later advocating) a petition, pleading, ... or other paper, an attorney ... is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

. . .

(3) the allegations and other factual contentions have evidentiary support

. . .

■ The Court has reviewed the pleadings in this case and Mr. Smith's statements at the § 341 meeting held January 9, 2001 and at the trial of the matter and conclude that all of his statements have been true. Mr. Smith did not initially disclose his retainer of $3,400 in the chapter 11 filing which would have been the best way to handle the matter. However, he did disclose it within 77 days of the filing, well before any questions were raised about it.

Mr. Burke was not required to disclose the retainer as cash which he held at the filing of the chapter 11 case. Mr. Smith held it as a retainer and it should be listed as such.

■ Mr. Smith did not file any fee applications in the chapter 11 case before it was dismissed. Once the case was dismissed, Mr. Smith did not have to file a fee application to be paid from the retainer and, in fact, the Court would not have heard a fee application if filed. The Court no longer had jurisdiction over Mr. Burke or his affairs. Therefore, if Mr. Smith deducted from the retainer for work he did during the chapter 11 case, after the dismissal, that was a matter between Mr. Burke and Mr. Smith.

■ When the chapter 7 was filed, Mr. Smith held no funds on retainer and the disposition of the money after the chapter 11 dismissal did not have to be disclosed on the chapter 7 petition.

Mr. Seymore asserts that there was something inappropriate about the actions of Mr. Smith. The Court concludes that the evidence showed no impropriety.

■ Mr. Burke committed no impropriety in regard to the fees because the disclosure was required of Mr. Smith-not him. Mr. Seymore's pleading, without directly stating it, questions how Mr. Burke even had the money to pay Mr. Smith in the first place. There has been no evidence presented on this point by Mr. Seymore. The Court therefore denies the

motion to the extent it is based on that theory.

██ This hearing and several others had made it very evident to the Court that Mr. Seymore and several other creditors and the debtor, Mr. Burke, have a very tense relationship and have had for some time. The Court has tried to tell Mr. Burke and these creditors several things: (1) this Court will not (and properly cannot) resolve ongoing complaints of harassment or postpetition problems of one or the other of them; and (2) the trustee and his counsel are charged with examining the assets and debts of Mr. Burke, and his testimony and sworn statements about the same, and will bring whatever actions are appropriate if Mr. Burke violates the Bankruptcy Code or Rules or titles 28 or 18.[1] Bottom line, the Court will not allow individual creditors to impede or rush the trustee's process of review and action in this or any case without an emergency necessitating quick relief. The trustee is the disinterested party specifically appointed to sort out the types of issues Mr. Seymore is raising. The Court will not allow Mr. Burke or his creditors to use this Court to harass or threaten each other either. If physical or verbal threats are real and actionable, the parties should take them to the state criminal courts. If the creditors disagree with Mr. Burke's schedules, they should take it to the trustee, not use the threat of a suit by the individual. This Court only deals with Mr. Burke's assets and debts. If there is an issue about the assets and debts, the first stop for Mr. Burke or the creditors must be the trustee. He is charged with dealing with the assets and reporting to the Court. 11 U.S.C. § 704.

██ Sanctions under Fed. R. Bankr.P. 9011 would be inappropriate against Mr. Smith and Mr. Burke for two reasons: (1) Mr. Seymore did not give Mr. Smith time to correct or amend any mistake as required by Rule 9011(c); and (2) Mr. Burke did not sign the disclosure of compensation and is not an attorney. As to reason one, Rule 9011 has specific requirements about notice to the alleged sanctionee. Mr. Seymore did not give this notice to allow corrections. Mr. Smith had already, on his own initiative, before any prompting, amended his disclosure anyway; however, Mr. Seymore did not comply with the Rule so the request could not be granted. As to reason two, Rule 9011 requires a signature on the paper which the creditor claims is false. Mr. Burke did not sign the compensation disclosure form.

██ Section 105 is the section of the Code which gives the Court a civil contempt power. *In re Williams*, 213 B.R. 189 (Bankr.M.D.Ga.1997); *In re A–1 Specialty Gasolines, Inc.*, 246 B.R. 445 (Bankr.S.D.Fla.2000). A sanction under § 105 is different than a sanction under Rule 9011. The Court can sanction parties

---

1. For instance, this Court heard and granted a motion of Mr. Seymore for sanctions against Mr. Burke only to the extent of compelling Mr. Burke to file complete schedules of assets and debts. Mr. Burke already has that duty, regardless of the motion, and the trustee will seek to deny Mr. Burke's discharge if he finds that the schedules are incomplete pursuant to 11 U.S.C. § 727. The Court will not grant a motion like Mr. Seymore's for sanctions prior to the trustee looking at the matter. Mr. Seymore and other creditors are better served giving information to the trustee and coordinating motions like this with him.

Mr. Seymore filed a third motion also seeking sanctions because he disagreed with an asset Mr. Burke listed on his schedules. The proper manner to deal with this is to provide information about the alleged asset to the trustee and let him determine its value and treatment in the case. This Court will not allow creditors to circumvent the trustee's process.

who have not signed pleadings and can impose sanctions for a broader range of reasons. *In re Collins*, 250 B.R. 645 (Bankr.N.D.Ill.2000). For sanctions to be imposed, a debtor or attorney's conduct must be very serious and egregious. E.g., *U.S. Trustee v. Bresset (In re Engel)*, 246 B.R. 784 (Bankr.M.D.Pa.2000) (attorney who never had client properly file schedules was liable for sanctions);[2] *National Indemnity Co. v. Proia (In re Proia)*, 35 B.R. 385 (D.R.I.1983) (when extremely inaccurate schedules were corrected only after three hearings and numerous amendments, fees were awarded to creditor counsel).

The Court concludes that there is no evidence either Mr. Burke or his attorney, Mr. Smith, violated 11 U.S.C. § 105 or Fed. R. Bankr.P. 9011 or any other Code sections about disclosure. Unlike the Proia and Engel cases in which the mistakes in schedules were either never corrected or only after numerous hearings, Mr. Smith amended his disclosure before the motion was even filed. A recent case, *Schroeder v. Rouse (In re Redding)*, 263 B.R. 874 (8th Cir. BAP 2001) lists cases in which sanctions and/or fee disgorgements were required when attorneys' fee disclosures were not properly made. *Id.* at 880. None of the cases involved situations where disclosure was made prior to the complaint as occurred in this case. See also *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (10th Cir. BAP 1997) (indicating that supplemental disclosure would be appropriate if error in initial filing).

THEREFORE, IT IS ORDERED that the motion of Donald Seymore for sanctions against Julian Burke and Michael B. Smith is DENIED without prejudice to the issues being raised later by the trustee.

---

**2.** The case provides case law on Mr. Burke's duty to file correct schedules and Mr. Smith's duty as his attorney to advise him. *Id.* at 791–94. The parties should note that the case states, correctly, that "the obligation to file accurate schedules includes a continuing duty to correct errors in filed documents." (cites omitted). *Id.* at 794.